HESS *v.* THE UNION STATE BANK OF BREMEN.

[No. 19,160.    Filed April 24, 1901.]

PRACTICE. — *General Denial.—Admissibility of Evidence.* — By §377 Horner 1897, providing that under a general denial of an allegation "no evidence shall be introduced which does not tend to negative what the party making the allegation is bound to prove," it is not meant that all evidence must be directly negative in character, but facts independent of those averred in the complaint, of a nature affirmative, but which have a negative effect upon the issues, are admissible. *pp. 525, 526.*

SAME. — *General Denial. — Admissibility of Evidence. — Banks and Banking.*—Plaintiff, who was cashier of a bank, deposited a certain sum of his own money with a correspondent bank, and had the same placed to the credit of his own bank. He subsequently brought suit against the bank of which he had been cashier to recover the money so deposited. *Held,* that under a general denial the defendant might prove that previous to making deposit of money sued for the plaintiff drew his personal check on the correspondent bank with which he had no personal account, in payment of notes held against him by such bank, and that the correspondent bank honored the check and charged same to defendant bank, and that no part of said money had ever been repaid by plaintiff. *pp. 526-528.*

From the Marshall Circuit Court.   *Affirmed.*

*W. B. Hess, E. C. Martindale, S. N. Stevens* and *H. A. Logan,* for appellant.

*Samuel Parker* and *C. P. Drummond,* for appellee.

HADLEY, J.—The evidence ·tends to prove that on February 7, 1891, appellant, Henry G. Hess, executed to the United States National Bank of Chicago, controlled by its president, Zimri Dwiggins, his two notes for $5,000 each. For a year previous Hess had been conducting at Bremen, Indiana, a private bank known as the Union Bank of

Bremen, and had been employing Dwiggins' bank as his Chicago correspondent. On February 14, 1891, the United States National Bank was merged into the Columbia National Bank of Chicago, Dwiggins becoming cashier and manager of the new bank, and the new bank succeeding to the assets of the merged bank, among which were Hess' two notes. February 28, 1891, Hess succeeded in accomplishing the organization of the Union State Bank of Bremen, appellee, into which he merged his private bank, and became cashier of the State Bank, and selected Dwiggins' new bank, the Columbia National, as the Chicago correspondent of the new Union State Bank of Bremen. March 6, 1891, Hess, having no individual account with the Columbia National, drew his personal check upon that bank for $10,000 in payment of his two notes. Dwiggins accepted the check, and canceled and returned to Hess his two notes as paid, and with the knowledge of Hess charged the face amount of the check, $10,000 and $62 additional as accrued interest to the Union State Bank of Bremen, appellee, with the letters H. G. H. set opposite the entry. Hess was the cashier of said Bremen bank, and as such officer early in April, 1891, received from the Chicago bank its monthly statement of account with the Bremen bank for March, 1891, which statement disclosed the particular charge of $10,062 against the Bremen bank, resulting from the payment of his notes, but said charge was neither then nor at any subsequent time placed upon the books of the Bremen bank by Hess or any one else. February 28, 1893, Hess deposited of his own money with the Chicago bank $7,593.36, and had the same credited to the Bremen bank, of which he was still the cashier, and received from the Chicago bank a deposit ticket showing the fact. This credit to the Bremen bank, like the charge against it of $10,062 about two years before, both appearing upon books of the Chicago bank in its account with the Bremen bank, was not at any time placed upon the books of the Bremen bank by Hess or any one else. Hess

never in any way or part reimbursed appellee bank for the $10,062 caused by him to be charged against its account by the Chicago bank when he took up his two notes, except by the deposit of said $7,593.36. May 11, 1893, the Chicago bank went into the hands of a receiver, and about the same time Hess resigned as cashier of the appellee bank, and about four years later, to wit, on May 14, 1897, demanded of appellee payment of the $7,593.36 the sum so deposited by him with the Chicago bank for the use of appellee, and upon its refusal he brought this suit to enforce such payment.

The complaint in substance charges the deposit of the $7,593.36 with the Columbia National bank for the use and benefit of appellee; that appellee accepted the deposit, drew against it, and appropriated the same to its own use, and had refused to pay it to appellant upon his demand. The general denial is the only answer to which evidence was addressed. Verdict and judgment for defendant. The error assigned is the overruling of appellant's motion for a new trial.

It is urged through many pages of brief that the verdict is contrary to law because reached by incompetent evidence and a consideration of erroneous principles of the law given the jury by the court. The argument being that the deposit of the $7,593.36 with the Chicago bank on the 28th of February, 1893, to the credit of the Bremen bank, its acceptance and use by the Bremen bank, and the demand and refusal of payment, being the only issues tendered by the complaint, the general issue only authorized evidence of such pertinent and contemporaneous facts as directly tended to negative one or more of the propositions affirmed in the complaint, and that the wide range allowed the inquiry, as indicated above, was an exploration of facts without the issues, and therefore erroneous. Our code provides that "under a mere denial of any allegation, no evidence shall be introduced which does not tend to negative what the party

making the allegation is bound to prove." §380 Burns 1894, §377 R. S. 1881 and Horner 1897. By this is not meant that all evidence under the general denial must be directly negative in character, but facts independent of those averred in the complaint, of a nature affirmative, but which have a negative effect upon the issues, are admissible. *Farmer* v. *Calvert*, 44 Ind. 209; Pomeroy's Code Rem. (3rd ed.), §671 *et seq.*

Here, under the allegation of indebtedness to the plaintiff on account of the deposit, it was surely competent for the defendant, under the general denial of such indebtedness, to prove by any fact or circumstance that it never incurred or owed the debt. Under the facts of the case it would seem that no other maintainable answer would meet the issues tendered. It is conceded by appellee that the appellant made the deposit of $7,593 with the Chicago bank, that the deposit was made with appellant's own money, and that appellee's credit account with the Chicago bank, thus increased, was disbursed by appellee's checks and drafts drawn against it. But all these things may be true, and no indebtedness or liability to appellant be incurred thereby. This, in fact, is the exact controversy.

These facts are undisputed, but are challenged for incompetency. March 6, 1891, appellant drew his personal check upon the Chicago bank for $10,000 in payment of his individual indebtedness to that bank; at that time the Chicago bank was the city correspondent of the Bremen bank, and had an open running account with that bank; appellant was the cashier of the Bremen bank; when he drew the check appellant had no individual account with the Chicago bank, nor any funds, or other thing of value, with said bank with which to pay said check; Dwiggins accepted the check, canceled and sent to appellant as paid his said two notes for $5,000 each, and with the knowledge and consent of appellant charged the amount thereof, $10,000, against the account of the Bremen bank; the transaction was communi-

cated to the Bremen bank in the usual course of business, but was never by appellant or any one else placed upon the books of the Bremen bank, nor brought to the knowledge of the board of directors; its Chicago balance was maintained by the Bremen bank, but appellant never at any time nor in any manner reimbursed the Bremen bank for the $10,000 used in the payment of his notes. It is also true that on February 28, 1893, appellant with his own money made the deposit of $7,593 sued for,—made it directly with the Chicago bank, the same bank that had assisted him two years before in the clandestine payment of his own debt with the funds intrusted to him by the directors of the Bremen bank, and though the deposit constituted an important item of credit to the Chicago account of the Bremen bank, for some reason not confessed, appellant deemed it expedient to withhold this credit as he had withheld the previous charge from the books of his bank, except a pencil memorandum made at some time upon the remittance register. If these two important transactions had an honest purpose behind them, why were they not conducted through the Bremen bank in the usual course of business? And if it be answered on the ground of accidental convenience, then it may be further inquired why they were both in like manner suppressed from the books of the Bremen bank? In the absence of a satisfactory explanation, we must assume that the deposit of February 28, 1893, at the time it was made was intended to be, and in fact was, but a restoration, in part, of that which had been wrongfully taken in 1891. This conclusion seems all the more certain from the fact that appellant asserted no claim on account of the deposit of 1893 for four years after he retired from the bank, and in the meantime had been, at another city and in a different business greatly pressed by his debts, and had made an assignment for the benefit of creditors, and in which assignment he disclosed no claim against the appellee. The facts given in evidence were all proper and neces-

sary fully to elucidate and characterize the claim sued for, and the proof proper under the general denial.

We have carefully examined the interrogatories submitted to the jury, the answers thereto, the instructions given and refused, the evidence excluded and allowed over objection, and find no available error. The judgment is clearly right. Judgment affirmed, with $100 damages.