## GOSHORN v. PEOPLE'S NATIONAL BANK OF WASHINGTON.

[No. 4,471. Filed December 9, 1903. Rehearing denied February 17, 1904.]

BANKS AND BANKING.—*Transmission of Money for Depositor.*—*Embezzlement by Cashier.*—*Principal and Agent.*—A depositor went to the bank with a view of withdrawing a portion of his deposit and depositing the same with a certain trust company in another city. The cashier suggested another trust company, saying "they are friends of ours," and the depositor concluded to do as directed and executed a check in the form of a receipt, delivered it to the cashier, with instructions to deposit the amount named with the trust company suggested. No remittance or deposit was made, the cashier merely using the receipt to cover up his own previous embezzlement. *Held,* that the bank was liable for the amount of the check.

From Daviess Circuit Court; *H. Q. Houghton,* Judge.

Action by Noah J. Goshorn against the People's National Bank of Washington. From a judgment for defendant, plaintiff appeals. *Reversed.*

*M. S. Hastings, J. G. Allen, J. C. Billheimer* and *E. E. Hastings,* for appellant.

*J. W. Ogden, Ephraim Inman, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellee.

ROBY, J.—Appellant avers in his complaint that appellee, a national bank, owes him $5,000, which it refuses, on demand, to pay. The trial court made a general finding for appellee and rendered judgment thereon.

Error is assigned upon its action in overruling appellant's motion for a new trial. The grounds upon which the motion was based were that the decision is not sustained by sufficient evidence and is contrary to law.

The facts out of which the controversy arises are that appellant was a depositor and had an account with appellee, the balance therein being in his favor on June 23,

1903, to the amount of $8,000.  He was also one of its
stockholders.  On the day named he went to the bank for
the purpose of securing a draft of $5,000, and depositing
that amount with the St. Louis Trust Company.  He
told appellee's cashier that the balance was larger than he
desired to carry without receiving interest, and that he
was going to deposit with the St. Louis company in order
to obtain interest.  The cashier suggested that he make
the deposit with a Louisville trust company, named, say-
ing, "they are friends of ours."  Appellant concluded to
do so, and executed a check in the form of a receipt as
follows:  "Washington, Indiana, June 23, 1900.  Re-
ceived of The People's National Bank *five thousand*
dollars cash on account of money due me as a depositor.
$............  *Dep. Columbia Trust and Finance Co.*
Lou., Ky.  N. J. Goshorn."  The instrument was made
by the use of a blank form.  The italicized words being
written by the cashier, after which appellant affixed his
signature and delivered the receipt to the cashier with in-
structions to deposit the amount named with the trust com-
pany designated.  A week or so later the cashier told the
appellant that "the certificate of deposit was among some
other papers that I had."  No remittance or deposit was
made.  August 31 following, the cashier destroyed cer-
tain checks which he had theretofore made upon the bank,
and which after payment he was carrying as cash, and
supplied the deficiency so created by appellant's $5,000.
Appellant's pass-book was balanced thereafter, and a
charge entered therein as follows: "Dep. Col. F. &. T. R.
Co. $5,000."  More than a year later he discovered the
fraud, and attempted to induce the cashier to make him
whole, but was unable to do so.  He then brought this ac-
tion.  The trial court found against him, apparently upon
the theory that in undertaking to transmit the funds the
cashier ceased to be the agent of the bank and became the

agent of the depositor. His fault being one, therefore, for which he alone was responsible, the bank being thereby exonerated as having made payment to the depositor through his agent selected for that purpose.

It is argued that there is some evidence to support the decision, and reference is made to expressions by appellant, when he learned of the fraud practiced upon him, relative to the liability of the cashier to him therefor. The facts upon which the rights of the parties depend are established without substantial dispute, and are not affected by such statements. In the absence of other directions it was the duty of the bank to pay to appellant or his agent the amount named in money. *Hancock* v. *Yaden,* 121 Ind. 366, 6 L. R. A. 576, 16 Am. St. 396; *Vansickle* v. *Furgeson,* 122 Ind. 450; *Born* v. *First Nat. Bank,* 123 Ind. 78, 7 L. R. A. 442, 18 Am. St. 312; *Farmers Loan, etc., Co.* v. *Canada, etc., R. Co.,* 127 Ind. 250, 11 L. R. A. 740.

It appears that the bank did not pay any money to appellant, or to anyone for him. The cashier merely used the receipt to cover up his own previous embezzlement. The assets of the bank were not decreased, and the juggling of accounts did not constitute payment. *Bedford Belt R. Co.* v. *Burke,* 13 Ind. App. 35; *Cutler* v. *American, etc., Bank,* 113 N. Y. 593, 21 N. E. 710, 4 L. R. A. 328; *Midland Nat. Bank* v. *Brightwell,* 148 Mo. 358, 49 S. W. 994, 71 Am. St. 608; *Fowler* v. *Wallace,* 131 Ind. 347, 353.

If the bank were directed to pay to an agent of a depositor entirely disconnected from it, such direction would not authorize it to pay in evidences of indebtedness held by it against the agent, to which the depositor was a stranger. The bank has in this case parted with nothing, except certain evidence against the person whom it insists was at the time acting as agent for the depositor. More

than this, it had through its cashier full knowledge of a fraud that was about to be perpetrated upon the depositor, the consummation of which was dependent upon its active assistance. So that if the premise that the cashier, for the purpose of making the remittance, was acting as agent for the depositor, were granted, the conclusion that the bank had made payment to him would not follow.

The premise can not, however, be conceded. An important and essential function of commercial banks is found in the transmission of funds. Such transmission is usually accomplished by the issuance of drafts. It may, and frequently does, call for transportation in specie. Whether the one or the other method is pursued, the result is the same. For a consideration the customer is enabled to utilize his means at another place. This was within the power possessed by the appellee bank. R. S. U. S. (2d ed.), §§5136, 5137; *American Ex. Bank* v. *Loretta, etc., Min. Co.,* 165 Ill. 103, 46 N. E. 202, 56 Am. St. 233; *Bank of British North America* v. *Cooper,* 137 U. S. 473, 34 L. Ed. 759, 11 Sup. Ct. 160. The transaction in question called for the transmission of appellant's $5,000 to the Louisville trust company. The receipt was *prima facie* evidence of payment. When appellee had complied with the directions given to it, such payment would cease to be controvertible. This it never made any attempt to do. It neither issued a draft, nor delivered specie to a carrier. Had it done so, and parted with value, the question of liability for the default of some intervening agency would be wholly different from that here presented.

If it were granted that as between appellee and its officer the latter had no authority to undertake to transmit funds to the trust company, the concession would not be sufficient to sustain the judgment. *Leach* v. *Hale,* 31 Iowa 69, 7 Am. Rep. 112; *Drovers Nat. Bank* v. *O'Hare,* 119 Ill. 646, 10 N. E. 360.

Appellee selected its own cashier, and held him out to the world as deserving of confidence. Those who deal with persons occupying such responsible positions have a right to rely upon their integrity, and do so constantly. Depositors do not deal at arm's length with the cashier. In language used by Justice Paxon of the supreme court of Pennsylvania, "It would be monstrous to allow them to take advantage of the ignorant and unwary, by reason of their position and the confidence it inspires." *Ziegler* v. *First Nat. Bank,* 93 Pa. St. 393, 397; *Steckel* v. *First Nat. Bank,* 93 Pa. St. 376, 39 Am. Rep. 758; *City Nat. Bank* v. *Martin,* 70 Tex. 643, 8 S. W. 507, 8 Am. St. 632.

Appellee received the money of appellant as a deposit. A large part of such deposit reached it through the delivery by him to it of government bonds, their sale to parties in Chicago, their transmission to a Chicago bank, and the return by that bank of the purchase price to appellee. It was appellant's debtor and can not be permitted to cancel the obligation through the fraud of its officer acting within the scope of his apparent duty and according to the general course of business. *Case* v. *Bank,* 100 U. S. 446, 25 L. Ed. 695; *Minor* v. *Mechanics Bank,* 1 Pet. 46, 7 L. Ed. 47.

Judgment reversed, and cause remanded, with instructions to sustain motion for new trial and for further proceedings.