## FIRST NATIONAL BANK OF TIPTON *v.* PECK.

[No. 21,828. Filed December 18, 1913.]

1. BANKS AND BANKING.—*Action for Deposit.*—*Defenses.*—In an action against a bank for the recovery of money placed on deposit, the fact that an *ultra vires* contract was made with the depositor in regard to investing such money after the same had been deposited affords no defense, especially where the money was never invested at all. p. 655.

2. BANKS AND BANKING.—*Authority of Cashier.*—*Losses.*—While the cashier of a bank is not authorized by his employment to forge checks, or commit other frauds, he is empowered to draw

on the bank's funds, and if by a false check he converts funds on deposit to his own use, the bank must suffer the loss.   p. 656.

3.  ACCOUNT STATED.—What Constitutes.—To constitute an account stated there must be an account rendered by one party to the transaction and an acceptance thereof by the other.   p. 657.

4.  ACCOUNT STATED.—Acceptance.—The assent to an account rendered necessary to constitute an account stated, may be either express or implied.   p. 657.

5.  ACCOUNT STATED.—Burden of Proof.—In an action against a bank to recover money deposited, the burden was on defendant to prove the material allegations of an answer alleging an account stated.   p. 657.

6.  ACCOUNT STATED.—Issues.—Evidence.—Under a reply in general denial to an answer alleging an account stated evidence tending to rebut the inference of assent arising from failure to object to the statement is admissible even though such evidence incidentally discloses fraud and mistake, and under such issues error in any item appearing on the face of the account rendered may be shown.   p. 657.

7.  BANKS AND BANKING.—Action for Deposit.—Estoppel.—Negligence.—Under a showing that there was a contract whereby defendant bank through its cashier was to loan plaintiff's deposits out for her, that $7,000 of her deposits, which her pass book showed had been loaned for her, had been converted by the cashier to his own use, that the check covering the purported loan was dated November 25, 1908, and was returned to plaintiff December 21, 1908, when her bank book was balanced, that on the day the check was paid to the cashier his account was greatly overdrawn and he deposited the amount of the check in gold, that by December 9, 1908, he had checked out the amount of such deposit above the overdraft, that one of the directors who was also vice-president had full knowledge of the contract with plaintiff, and that the custom had been for plaintiff to leave the notes taken for loans made from her deposit account in an envelope at the bank, which collected the interest and credited her therewith, plaintiff's failure to verify her account as shown by the pass book and demand an inspection of the note supposed to have been taken for the purported $7,000 loan was not negligence barring her right to recover against the bank.   pp. 658, 659.

8.  BANKS AND BANKING.—Officers.—Knowledge of Affairs.—When the vice-president of a bank, who was also a director, had knowledge of a contract made by the cashier with a depositor for investing the latter's deposits, such knowledge must be imputed to the bank.   p. 658.

9. BANKS AND BANKING.—*Action for Deposit.—Demand.—Waiver.*—A bank's denial of liability for the amount of a deposit, which was converted by the cashier to his own use, operates to waive demand by check as a condition precedent to a suit against the bank therefor. p. 659.

10. INTEREST.—*Demand.—Necessity.*—A bank depositor suing to recover the amount of a deposit on an implied contract as for money had and received, may recover interest only from the date of demand. p. 659.

11. APPEAL.— *Review.— Amendments Deemed Made.— Conformity to Proof.*—A complaint to recover money had and received, asking interest from a specified date, will be deemed amended on appeal to conform to the evidence so as to permit a recovery of interest from the date of demand. p. 660.

From Tipton Circuit Court; *Leroy B. Nash,* Judge.

Action by Sarah C. Peck against the First National Bank of Tipton. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Ferdinand Winter* and *Edward Daniels,* for appellant.

*John W. Holtzman, Lewis A. Coleman, Every A. Mock* and *Wm. Gage Hoag,* for appellee.

MORRIS, C. J.—Action by appellee against appellant. The first paragraph of complaint alleges an indebtedness of $24,000, for money had and received, while the second is for an accounting under an alleged oral agreement by the terms of which appellant promised to invest appellee's funds in loans secured by first mortgage on real estate. Appellant answered in three paragraphs, the first of which was a general denial, and the second a plea of payment. The third alleges that when appellant received the various sums for which it became indebted to appellee she was credited therefor on a bank book, which was delivered to her each time a credit was entered, which book was retained by her as an evidence of such credits; that at various times appellee drew out sums of money, by checks drawn by her, on appellant, or otherwise, as ordered by appellee; that often, before the bringing of the suit, the bank book was delivered by appellee to appellant, for the purpose of having charged

thereon, as against the credits therein shown, various amounts theretofore paid out by appellant on said checks; that at each of said times appellant entered on the book the amounts paid, as represented by the checks, and stated the balance due appellee, and canceled all the checks, drafts, etc., charged against her account, and thereupon delivered the same, with the book, to appellee, as and for a true statement of her account; that on each occasion appellee accepted the same, without making any objection; that the last statement was made on the —— day of ——————, 1909, and at said time the balance shown on the bank book as due appellee, was $————, which sum appellant is willing and ready to pay, whenever demanded, but that no demand therefor has ever been made; wherefore, appellant avers, appellee is bound by each and every statement of account, made as aforesaid, in the bank book, as an account stated. The cause was tried by the court, which found the facts specially, and stated its conclusions of law thereon. Appellant here relies on the alleged error in the conclusions of law, and in overruling the motion for a new trial.

The special finding was based on the first paragraph of complaint, and states, among other things, that appellant was organized under the United States banking laws, and began a general banking business at Tipton in 1902, from which time, until July 26, 1909, its officers were Elbert W. Shirk, president, Nannie R. Shirk, vice-president, William H. Marker, cashier, and Noah R. Marker, assistant cashier; that it suspended, July 26, 1909, but resumed business on August 13, 1909, with George Shortle as cashier and John E. Shirk as assistant cashier; that since its organization appellee has had a deposit and checking account with it; that on November 25, 1908, appellee had on deposit the sum of $9,860.89, when William H. Marker, cashier, executed the following check against such account: "Tipton, Ind., Nov. 25, 1908. Pay to the order of loan from bank,

S. G. Y. $7,000. To the First National Bank, Tipton, Ind."
(Signed) "Sarah C. Peck, W. H. M."; that the check was
executed by Marker without authority or consent of ap-
pellee, and was wrongfully paid by the bank to Marker,
who thereupon deposited the proceeds to the credit of his
own account which was then overdrawn in the sum of
$4,733.35; that the check was wrongfully charged against
appellee's account; that appellee received no part of the
proceeds thereof, but the same were unlawfully appro-
priated by the bank and cashier Marker, and knowingly
converted to the use of the cashier and the bank. It is
further found that on January 21, 1909, and May 5, 1909,
Marker executed checks for $12,000 and $5,000 respectively
against appellee's account, signed "Sarah C. Peck, W. H.
M." purporting on the face thereof to be for loans; but
the court finds that these checks were correctly charged
against appellee's account, because the proceeds were used
in making loans to the Beeler Manufacturing Company, au-
thorized by appellee, who accepted notes of the company, for
the aggregate amount of $17,000. It is also found that
Wm. H. Marker as cashier, had exclusive control and man-
agement of the affairs of the bank, and personally directed
its business; that the other officers and directors of the
bank exercised no supervision over its affairs, other than
to receive general reports and statements of the bank's
business as compared with other stated periods; that the
other officers and directors gave him (Marker) unrestrained
authority to manage and control the business of the bank;
that appellant and appellee, shortly after the bank's incor-
poration, agreed that appellee should keep her money on
deposit in the bank, and, when opportunity offered, the
bank was to loan her money, on notes secured by first mort-
gage on real estate, or other notes approved by the bank,
and, when idle, the bank should have the use and benefit of
her money on deposit; that appellee kept large sums on de-
posit, from which the bank, from time to time, made loans on

first mortgage security, or notes by it approved; that Marker, as cashier, was authorized by appellee to execute checks against her account for the purpose of making loans for her as above described, but for no other purpose, and neither the bank nor its cashier had any authority to use her money on deposit for any purpose except as above specified; that on May 22, 1909, appellee, at the bank, requested the cashier to state the condition of her account, and was informed that she had $17,000 on deposit, and the cashier thereupon delivered to her the following writing:

"Tipton, Indiana, May 22, 1909.
Received of Mrs. Sarah C. Peck, the sum of seventeen thousand dollars ($17,000) the same to be loaned by the First National Bank on such security and notes that would be satisfactory to said bank, and, as interest on said loans is paid, it is to be credited to the account of Mrs. Peck. First National Bank, By W. H. Marker, Cashier.";

that appellee did not have said amount on deposit, but the writing was executed for the purpose of deceiving appellee in regard to her account, and she was deceived and misled thereby; that for the purpose of misleading and deceiving appellee, appellant entered on appellee's pass book, on November 25, 1908, a statement that said $7,000 check was given for a loan made to S. G. Young, when in fact no loan was made, but appellee believed the statement entered in her book to be true, and was misled thereby; that appellee reposed great confidence in the bank, and its cashier, and when loans were made for her on short time notes, she did not demand an inspection thereof, or take them into her own possession; that it had been the custom to keep her notes in the bank, in a separate receptacle, for collection, by the bank, of principal and interest thereon; that on December 21, 1908 appellee's bank book was balanced, showing that there was charged against her the $7,000 check, of November 25, 1908, but by reason of said confidence, and said statement, she believed that a loan

had been made, for her, to S. G. Young for $7,000, and his note therefor was in the receptacle, with her other notes; and she did not then demand the note nor an inspection thereof; that on May 18, 1909, her pass book was again balanced, but she still believed that the supposed Young note was at the bank with her other notes; that appellee believed the supposed Young note was at the bank until it suspended, when she made an investigation and discovered that no such note had ever existed and that no part of the proceeds of the $7,000 check had been used in securing a loan, but the same had been appropriated as aforesaid; that thereupon appellee demanded of appellant in writing, but not in the form of a check, the payment of $7,000, which was refused, appellant at the time denying any liability to appellee; that the sum of $7,805, representing principal and interest at six per cent since November 27, 1908, is due and unpaid.

The conclusion of law stated was that appellee was entitled to judgment for said sum. The motion for a new trial assigned, among other grounds, the insufficiency, in law and fact, of the evidence, to support the findings, and that the assessment of damages was too large. It is contended by appellant that the conclusion of law is erroneous, because it was beyond the power of a national bank to become the agent of a depositor to make loans according to the terms of the agreement; that actual knowledge of the directors that Marker, cashier, was acting under the provisions of the contract, or even a participation in such acts by the directors themselves, would not estop the bank from denying liability, because such contract was *ultra vires* and could not be validated by acquiescence, ratification or estoppel. A great many authorities are cited in support of the proposition. For the purposes of this decision, it might be fully conceded that the contract was *ultra vires*, and that nothing stated in the findings would estop the bank from denying liability for any cause

1.

of action founded on it, and that appellee was conclusively presumed to know the law limiting the power of national banks, yet it would not follow, in the state of the record before us, that the court erred in its legal conclusion. The findings and conclusion rest on the first paragraph of complaint, which merely seeks a recovery for money had and received. Nothing is sought for any alleged breach of the contract, but simply a recovery for money deposited. Had there been a finding on the second paragraph, under which appellee evidently sought a recovery for the $17,000, loaned to the Beeler Company in alleged violation of the contract, a different question would be presented. The contract is not directly involved, and the finding with reference thereto needs no consideration except indirectly in relation to the question of notice, arising under appellant's answer. It is not claimed that the bank, or Marker, invested, or attempted to invest, any part of the $7,000. On the contrary it is conceded that Marker, cashier, embezzled the entire amount. The money was received by the bank, on deposit, in the usual course of business. The fact that an *ultra vires* contract was made in regard to investing it after it had been deposited, surely affords no defense to the bank against returning the deposit, on demand, where the same was never invested at all. *L'Herbette* v. *Pittsfield Nat. Bank* (1894), 162 Mass. 137, 38 N. E. 368, 44 Am. St. 354; *Hanson* v. *Heard* (1897), 69 N. H. 190, 38 Atl. 788. While the cashier of a bank is not authorized by his employment to

2. forge checks, or commit other frauds, he is empowered to draw on the bank's funds, and if, by a false check, he converts to his own use, funds on deposit, the bank must suffer the loss. *Phillips* v. *Mercantile Nat. Bank* (1894), 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. 596.

Appellant claims that because the reply to appellant's third paragraph of answer was only a general denial, facts in the findings showing fraud or mistake should be disre-

garded. Appellant's third paragraph of answer pleads an account stated, to constitute which there must be an account rendered by one party to the transaction and accepted by the other. 1 Cyc. 364, 369. The assent to the account rendered may be either express or implied. 1 Cyc. 375. It may be inferred from the fact that no objection was made within a reasonable time, and appellant's third paragraph proceeds on this theory. The reply among other things, denied Mrs. Peck's assent to the statement of account. The burden was on appellant to prove all the material allegations of the answer. Only one item of the account was in controversy. This item was the charge against appellee's account, made November 25, 1908, for $7,000. The account rendered by appellant was by means of appellee's pass book, and the check, in both of which it was stated that the charge was for a loan made to S. G. Young. It cannot be doubted that under the general issue evidence was admissible which would tend to rebut the inference of assent from the lack of objection, and if such evidence incidentally disclosed fraud and mistake, it was none the less competent. Furthermore, this court has held that under a general denial of an account stated, error in any item, appearing on the face of the account rendered, may be shown. *Bouslog* v. *Garrett* (1872), 39 Ind. 338; see, also, *Binford* v. *Miner* (1885), 101 Ind. 147; *Hess* v. *Union State Bank* (1901), 156 Ind. 523, 60 N. E. 305; 1 Cyc. 379, 385, 399.

The findings of the court that the check in question was not executed for the purpose of making a loan to S. G. Young, or any one else, that no such loan was ever made, etc., and that appellee was ignorant of such facts during the period of her silence after the rendition of the account, are within the issues. Appellant contends that neither under the evidence nor findings was appellee entitled to recover,

because her bank book was balanced December 21, 1908, and the check for $7,000, dated November 25, 1908, was then returned to her; that if she had then demanded an inspection of the supposed note of S. G. Young, the fraud would have been instantly discovered; that she negligently failed to discover what it was her duty to ascertain, and failed for several months to make any objection, and in the meantime Marker had disposed of all the proceeds of the fraudulent check, and left the bank without remedy; that by such neglect she was estopped from questioning the correctness of the balance shown by the statement of December 21, 1908. *Leather Manufacturers Bank* v. *Morgan* (1886), 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811, is cited to support the proposition. In that case, the depositor intrusted his business affairs largely to his clerk, who, from time to time, raised the amounts of various checks signed by the depositor. These checks were paid by the bank as presented, and charged to the depositor's account. The pass book was balanced frequently, but the depositor entrusted its examination to the clerk who was committing the forgeries. It was held that the depositor's negligent conduct might estop him from questioning the stated balances.

Whether, under the pleadings here, any question of estoppel may be asserted by appellant, we do not determine. It is sufficient to say that the facts, disclosed by the findings and evidence, do not warrant the application of such doctrine. The same day the fraudulent check was paid, Marker deposited in the bank, the same account, as shown by his deposit ticket, in gold. At that time his account with the bank was overdrawn to the extent of $4,733.65, and consequently the bank received that amount. The balance was checked out by Marker before December 9, 1908, nearly two weeks before Mrs. Peck's book was balanced. It is further shown by the evidence that one of the directors, who was also vice-president of the bank, was,

long before 1908, fully aware of the contract with Mrs. Peck regarding the loaning of her funds, and such knowledge must be imputed to the bank. The custom, for years, had been for Mrs. Peck, who resided in Indianapolis, to leave her notes given for loans from her deposit account, in an envelope, at the bank, and the latter collected them, and the interest thereon, and credited the proceeds to her deposit account. A superficial examination by any director, or officer of the bank, of its transactions in the latter days of November, 1908, would have resulted in discovering Marker's fraud. Mrs. Peck under all the circumstances, was guilty of no negligent conduct that would bar a recovery, and the bank must be held responsible for the loss. *Goshorn* v. *Peoples Nat. Bank* (1904), 32 Ind. App. 428, 69 N. E. 185; *Shipman* v. *Bank of State of New York* (1891), 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. 821, and note.

It is asserted that no sufficient demand for the payment of the $7,000 was made—that such demand was not made in the form of a check. It is found that the bank denied any liability, and such denial, in effect, waived the demand by check. *Whitcomb* v. *Stringer* (1903), 160 Ind. 82, 66 N. E. 443; *Ferguson* v. *Hull* (1894), 136 Ind. 339, 36 N. E. 254; *Kirkham* v. *Moore* (1903), 30 Ind. App. 549, 65 N. E. 1042. Complaint is made that the court erred in admitting certain evidence. The error, if any, in such respect, was harmless. Interest was allowed appellee from November 27, 1908, the date of the payment of the fraudulent check. No demand was made until July 26, 1909, as shown by the findings. Under the pleadings she was entitled to interest from the date of demand only. The judgment was entered on October 28, 1910, at which date, $527.33, in interest, had accrued. The interest allowed was $805, which exceeded the amount due, in the sum of $277.67. The complaint sounded in contract. An action for conversion might have been maintained, but ap-

pellee waived the tort, and sued on an implied contract which limited her right to recover interest, to the date of demand. The complaint demands interest from August 1, 1910, only, but on appeal the same will be deemed amended to conform to the evidence.

There is no error in the record except as to the amount of recovery, which is excessive in the sum of $277.67. If appellee, within 30 days, shall remit said excess, the judgment will be affirmed, otherwise the same will be reversed for such error.

NOTE.—Reported in 103 N. E. 643. See, also, under (1) 5 Cyc. 518; (2) 5 Cyc. 477, 478; (5) 1 Cyc. 395; (6) 1 Cyc. 392, 399; (7) 1 Cyc. 382; (8) 5 Cyc. 460; (9) 1 Cyc. 698, 699; (10) 22 Cyc. 1547; (11) 3 Cyc. 444. As to law of account stated, see 136 Ann. St. 37. As to the liability of bank directors for default or negligence of cashier, see 4 L. R. A. (N. S.) 597; 26 L. Ed. U. S. 1039, 1078. As to what constitutes an account stated, see 27 L. R. A. 811. On the question of imputation of knowledge of bank officers to bank, where officers are personally interested, see 29 L. R. A. (N. S.) 558.

