## FLETCHER AMERICAN NATIONAL BANK v. CRESCENT PAPER COMPANY.

### [No. 23,672. Filed June 7, 1923.]

1. BANKS AND BANKING.—*Forged Indorsement of Check.—Action for Wrongful Payment of Check.—Answer.*—In an action by a depositor against a bank for wrongfully paying checks on forged indorsements, an answer that the defendant balanced the plaintiff's account each month and returned the canceled checks received during the previous month, with a statement of the plaintiff's account and the balance owing by defendant to plaintiff, but that plaintiff neglected to examine such checks and failed and neglected to notify defendant of any error or mistake in any of the statements of account, but not denying the averment in the complaint that plaintiff was ignorant of the fact that the indorsements were forged, or pleading any facts tending to show that plaintiff would have known or ascertained that fact if it had exercised care in examining the canceled checks or that plaintiff's alleged failure to examine the canceled checks and statements of account caused defendant to pay out money on the forged checks, would be insufficient, in the absence of allegations constituting an estoppel, or facts showing that the alleged negligence of plaintiff was the proximate cause of defendant's payment of the checks, or that plaintiff had anything to do with such payments, or with any resulting loss to the defendant. p. 334.

2. PRINCIPAL AND AGENT.—*Notice to Agent.—Fraud on Employer.—While Perpetrating.*—Where an employe fraudulently induced his employer to execute certain checks, stole them, forged the name of the payee and negotiated the checks, which were paid to the indorsee, resulting in the depletion of the employer's account, the knowledge obtained by the employee while engaged in the scheme to defraud his employer would not bind the latter, as the employee was not acting within the scope of his employment while doing such acts. p. 335.

3. BANKS AND BANKING.—*Forged Indorsement of Checks.—Payment by Bank. — Answer to Complaint. —* In an action against a bank for making payments of checks on forged indorsements by an employee of the plaintiff, an answer setting up constructive notice on the part of the plaintiff of all the facts learned by its employee while perpetrating the fraud on his employer is insufficient, where the pleading does not allege that the employee then learned any facts from which the plaintiff would have known of the forgeries if all that he so learned had been communicated to it. p. 335.

Fletcher, etc., Bank *v.* Crescent Paper Co.—193 Ind. 329.

4. BANKS AND BANKING.—*Forged Indorsements of Checks.— Payment by Bank.—When Demand Unnecessary.*—In an action against a bank for making payments on forged indorsements of checks, a demand on the bank in the usual manner by presenting a check for the amount in controversy is unnecessary where the bank has denied all liability for the money paid out. p. 336.

5. BANKS AND BANKING. — *Checks. — Payable to Fictitious Payee.—Effect.—Statute.*—Under §9 of the Negotiable Instruments Law (Acts 1913 p. 120, §9089i Burns 1914), the mere fact that a check is made payable to a fictitious or nonexisting payee does not make it, in legal effect, payable to bearer, but, in order to give the check that effect, the drawer of the check must have known that fact, and it is not sufficient that, by the exercise of reasonable care, he might have known it. p. 340.

6. BANKS AND BANKING. — *Checks. — Payable to Fictitious Payee.—Knowledge of Drawer.—Question for Jury.*—In an action by a depositor against a bank for paying out money on its checks fraudulently issued by one of its employees, and made payable to a fictitious payee, it is a question for the jury whether the fact that the checks were so made payable was known to the depositor. p. 341.

7. BANKS AND BANKING.—*Returned Canceled Checks.—Examination by Depositor.*—Ordinarily, a depositor in a bank is not required to know the signatures of the payees of checks issued by him, nor to examine the indorsements on the backs of returned checks to ascertain whether or not the bank had paid money on forged indorsements, but *held* that the law requires a depositor, on the balancing of his account and return of his canceled checks, to exercise reasonable care in examining the account and checks, to know whether the balance shown to his credit is correct. p. 342.

8. BANKS AND BANKING.—*Returned Canceled Checks.—Examination by Depositor.—Due Diligence Question for Jury.*—In a depositor's action against a bank for making payments on checks fraudulently issued by an employee, who had theretofore been guilty of irregularities, where the checks were made payable to a former creditor, but with whom business relations had ceased, and the name of the payee was spelled differently from that of the former creditor, together with other irregularities, the question whether the depositor had used due diligence under the circumstances shown by the evidence is for the jury. p. 343.

9. BANKS AND BANKING.—*Returned Canceled Checks.—Examination by Depositor.—Knowledge of Employee.*—Where an em-

Fletcher, etc., Bank *v.* Crescent Paper Co.—193 Ind. 329.

ployee of a depositor fraudulently procured the depositor to issue checks payable to a fictitious payee, using a name resembling that of a former creditor to whom numerous checks had been issued, the employee thereafter forging the payee's indorsement thereon and negotiating them, and the depositor entrusted the examination of all its returned canceled checks to the delinquent employee, the depositor was chargeable with knowledge of whatever facts an examination in a reasonably careful manner would have disclosed to an honest clerk.  p. 344.

10. BANKS AND BANKING.—*Returned Canceled Checks.—Examination by Depositor.—Knowledge of Employee.—Instruction.—* In an action by a depositor against a bank for making payments on checks fraudulently issued by a clerk to a fictitious payee, who thereafter forged the indorsement of the payee and negotiated the checks, an instruction that the plaintiff was not bound by the knowledge of the dishonest clerk as to the forged indorsements, and that, unless the plaintiff obtained such knowledge through some other source than such clerk, or acquired knowledge of facts from which it should have known, or had reason to know, that the indorsements were forgeries, it would not be chargeable with knowledge of such forgeries, was incorrect, as the plaintiff would be chargeable with all knowledge of the forgeries which would be disclosed by an examination of the returned canceled checks, regardless of the fact that the examination was made by the clerk that committed the forgery.  p. 344.

11. APPEAL.—*Motion for New Trial.—Time of Filing.—Presentation to Court.— Presumptions.—* Where the record shows that, within thirty days after the verdict was returned, during a term of court, and "before the same honorable court" that tried the case, the plaintiff filed a motion for a new trial, and that thereafter, the court entertained and sustained the motion, it will be presumed that the motion was filed in open court and presented to the judge at the time of filing, since, except so far as the record affirmatively shows error to have been committed, all presumptions are indulged in favor of the action of the trial court.  p. 345.

From Marion Superior Court (103,905) ; *Vincent G. Clifford,* Judge.

Action by the Crescent Paper Company against the Fletcher American National Bank.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*William A. Pickens, Linton A. Cox* and *Earl R. Conder,* for appellant.

*Charles O. Roemler* and *Harry O. Chamberlain,* for appellee.

EWBANK, J.—Appellee sued, as plaintiff below, to recover from appellant, defendant below, the sum of $10,087.65, alleged to have been deposited by plaintiff in a bank operated by defendant, and wrongfully paid out on ten checks drawn by plaintiff against said deposit, to a person other than the payees named in the checks. The first of these checks was drawn July 13, 1915, and the last one May 10, 1916, the others being drawn at intervals of about a month between those dates, and the last was paid on or near the day it was drawn. All named H. Lindenmeyer & Sons as payee, and bore the indorsement "For deposit H. Lindenmeyer & Sons, H. Lindenmeyer," and also the indorsement of a bank in which they were deposited by the person who so indorsed them. But it was alleged that the indorsement of the name of "H. Lindenmeyer & Sons" was forged. Demurrers to certain answers were sustained and defendants excepted. A verdict in favor of the plaintiff for $51.96 having been returned, the plaintiff filed its motion for a new trial, which was sustained, and the defendant (appellant) excepted. A second verdict was returned in favor of the plaintiff for the full amount of the demand, with interest, in the total amount of $11,621.49, for which judgment was rendered. Defendant's motion for a new trial was overruled, to which ruling, it excepted, and perfected a term appeal. Sustaining demurrers to each of the second and third paragraphs of answer, granting plaintiff a new trial, and overruling defendant's motion for a new trial are assigned as errors.

The complaint was in ten paragraphs, all substan-

tially alike, except that each counted upon the alleged payment, on a forged indorsement of the name of the payee, of a check differing in amount, in date of execution and in date of payment from the checks set out in the other paragraphs. The first paragraph alleged, in substance, that plaintiff kept its banking account with defendant, and had on deposit large sums of money, subject to check; that on July 13, 1915, plaintiff drew its check to the order of "H. Lindenmeyer & Sons" for $968.85, but that the check was stolen from plaintiff's possession by an employee named Preston, who indorsed on the back the name of "H. Lindenmeyer & Sons", without authority so to do, and that such indorsement was a forgery; that Preston then deposited it in a designated state bank, to the credit of a fictitious account which he opened with that bank in the name of "H. Lindenmeyer & Sons," all without the knowledge or consent of plaintiff, or of said "H. Lindenmeyer & Sons"; that, in due course of business, said state bank presented the check, as so indorsed, to defendant for payment, and without the knowledge or consent of plaintiff or said "H. Lindenmeyer & Sons," defendant paid it to said state bank, and deducted the amount from plaintiff's account; that on the fifth of the next month, said check was canceled and returned to plaintiff, but was stolen from plaintiff by its said employee, and destroyed, so that a return thereof cannot be tendered; and for that reason, also, plaintiff did not learn or know of said forged indorsement until June 10, 1916, whereupon it immediately notified defendant of the same. And that on July 25, 1916, plaintiff informed defendant of its inability to tender back the check and the reason therefor, and demanded of defendant the said sum, which demand was refused.

The second paragraph differed from the first in that it counted upon a check for $655.05, dated, deposited

and paid August 13, 1915, which was canceled and returned on the fifth of the next month. And the other paragraphs, respectively, counted on checks which were drawn and paid, respectively, in September, October and November, 1915, and in January, February, March, April and May, 1916, each being canceled and returned on the fifth of the month after its payment, the checks differing in the amounts for which they were drawn, but all the paragraphs being otherwise, in substance, the same as the first paragraph.

The first paragraph of the answer was a denial. The second was addressed separately to each paragraph of the complaint, and alleged that it was, and long had been, a rule and custom in defendant's banking business to balance the accounts of depositors, including plaintiff, at the end of each month, and to return the canceled checks, with a statement of the depositor's account, and the balance owing by defendant to such depositor, which rule and custom was known to plaintiff; that pursuant thereto, on a day in August, 1915, and in every succeeding month, to and including July, 1916, the defendant balanced plaintiff's account with the bank and canceled and returned its checks received during the previous month; but that plaintiff failed and neglected to examine the canceled checks when so returned, and failed and neglected to notify defendant of any error or mistake in any of the statements of account so returned to it, but acquiesced in and approved each statement of account and the balance therein stated as owing by defendant to plaintiff. No facts were alleged tending to deny the averment in the complaint as to plaintiff's ignorance of the fact that the indorsements on the checks were forged, or tending to show that plaintiff would have known of that fact if it had exercised care in examining the canceled checks, or that plaintiff's alleged failure to examine the can-

celed checks and account caused defendant to pay out money on the forged checks. And since it wholly fails to state facts constituting an estoppel, or facts showing that the alleged negligence of plaintiff was the proximate cause of defendant's loss in paying the checks, or that it had anything whatever to do with such payments, or with any resulting loss to defendant, it was not error to sustain a demurrer to this paragraph of answer. *Jordan Marsh Co.* v. *National Shawmut Bank* (1909), 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; *Los Angeles Inv. Co.* v. *Home S. Bank* (1919), 180 Cal. 601, 182 Pac. 293, 5 A. L. R. 1193; *Critten* v. *Chemical Nat. Bank* (1902), 171 N. Y. 219, 229, 63 N. E. 969, 57 L. R. A. 529.

The third paragraph of answer differs from the second in alleging that after the canceled checks were returned to defendant, bearing the forged indorsements, they and the statements of account returned by plaintiff with them were examined by said Preston, the alleged forger, in the discharge of his alleged duties as an employee of defendant, instead of alleging as did the second paragraph that defendant failed and neglected to examine them. But nothing is stated as to what was disclosed by such examination, as distinguished from what Preston knew by reason of having, himself, purloined the checks, forged the indorsements, and made the deposits in the name of the payee. Preston was not acting within the scope of his employment when he fraudulently induced his employer to execute the checks, stole them, forged the name of the payee and negotiated them, and his employer was not charged with any knowledge obtained by him in doing those unlawful acts. *Prudential Ins. Co.* v. *National Bank of Commerce* (1920), 227 N. Y. 510, 125 N. E. 824, 826, 15 A. L. R. 146, 148; *Shipman* v. *Bank, etc.* (1891), 126 N. Y. 318, 27 N. E. 371,

22 Am. St. 821, 12 L. R. A. 791; *Critten* v. *Chemical Nat. Bank, supra; First Nat. Bank* v. *Farrell* (1921), 272 Fed. 371, 16 A. L. R. 651 (certiorari denied, 257 U. S. 634, 42 Sup. Ct. 48, 66 L. Ed. ——) ; Pomeroy, Eq. Jurisp. §675; see note, 15 A. L. R. 163. And since it is not made to appear by anything alleged in the third paragraph of answer that Preston learned any facts by an examination of the returned checks and account from which plaintiff would have known of the forgeries if all that he so learned had been communicated to it, this paragraph was insufficient on demurrer.

Appellant complains of the insufficiency of the evidence, in that there was no evidence that plaintiff ever presented a check for the money in controversy, 4. and was refused payment, or ever made any other than an oral demand for it. The undisputed evidence showed that the plaintiff continued to make deposits in defendant's bank, and had never attempted to close out its account. And appellant insists that the bank was under no obligations to pay out any of the money deposited with it when orally demanded, but only in payment of checks as they should be presented. But after the bank had sent to plaintiff statements of account, showing that plaintiff was charged with the amount of certain checks paid on forged indorsements, and was credited only with so much of its deposits as remained after deducting those charges, enclosing the canceled checks as vouchers, and, when asked, had refused to correct the account, and denied all liability for what had been so paid out, a formal demand by presenting a check to withdraw the balance claimed was unnecessary. A party is not required to do a useless act. And after a controversy had arisen, and the bank had definitely disclaimed all liability for the amount of the canceled checks, any further demand could have served no useful purpose. *First Nat. Bank*

v. *Peck* (1913), 180 Ind. 649, 659, 103 N. E. 643; *Pratt* v. *Union Nat. Bank* (1909), 79 N. J. Law 117, 120, 75 Atl. 313; *Holden* v. *Farmers' & Traders' Nat. Bank* (1915), 77 N. H. 535, 93 Atl. 1040, L. R. A. 1915E 309, Ann. Cas. 1917E 23; *Miller* v. *Western Nat. Bank* (1896), 172 Pa. 197, 33 Atl. 684.

There was evidence to the effect that, during the years 1915 and 1916, plaintiff had on deposit with defendant a balance exceeding $50,000; that plaintiff issued more than 150 checks soon after the tenth of each month, which were signed by the treasurer and countersigned by the president or the secretary, each of whom was head of a department; that statements from the mills covering purchases of paper, or statements prepared in plaintiff's office showing shipments received, were checked with the purchase ledger by Preston, the alleged forger, and after checks had been prepared and run through the protectograph they were entered by Preston in a book called the voucher register, and were then sent to the officers for their signatures; that one-fourth of all statements paid were so made out by Preston from memoranda of purchases; that Preston was a bookkeeper and confidential clerk, who had been in the employ of plaintiff since 1907, and since 1914 had had charge of the purchase journal and purchase ledger, which were the only books that listed all the purchases made by plaintiff, the business being operated in departments, and that he also kept one of the city sales ledgers and one of the outside sales ledgers, but not all of the books, made deposits at the bank, made up payrolls, and received from the bank statements and canceled checks each month; and that checks, when signed, were handed to him for mailing, and he mailed them out; that the cashier was head bookkeeper and sometimes made entries in the purchase

journal and purchase ledger, and kept the account with the bank; at the time Preston took charge of the purchase journal and purchase ledger, plaintiff had an account with the firm of Henry Lindenmeyr and Sons, of New York, to whom a check for the last purchase actually made from them was issued in December, 1914; that for ten years prior to said date, money had often been paid by checks of plaintiff to Henry Lindenmeyr and Sons; that the personnel of said firm was somewhat changed in February, 1915, but not the firm name, and the firm continued doing a general wholesale business in paper, but plaintiff ceased buying from it; that checks were drawn, indorsed and paid, as alleged in the complaint; that Preston would make out an invoice as if for a shipment received from "H. Lindenmeyer & Sons", or from "Lindenmeyer & Sons", procure it to be marked by the cashier for payment, then enter it in the "voucher register", make out a check as if in payment of the account, run it through the protectograph, and present it to the officers for signatures; when signed and countersigned, all checks were returned to Preston, whose duty it was to mail them; he took out those payable to "H. Lindenmeyer & Sons", or to "Lindenmeyer & Sons", and deposited them in the account he had opened in the state bank mentioned in the complaint; seven of these checks were entered by Preston in the voucher register as they were drawn, but one of them was entered therein as being drawn in favor of Strathmore Paper Company, and two as drawn in favor of Marathon Paper Company, the number, date and amount of each being correctly recorded, to neither of which was plaintiff indebted when these checks were issued; that neither the purchase journal nor the purchase ledger showed any purchases to have been made from the payee of the checks in question, and it does not appear that any other books of plain-

tiff mentioned H. Lindenmeyer and Sons, except only the voucher register.

About the time Preston was married, in 1912, he had overdrawn his pay account $200, putting tickets in the drawer, as employes sometimes did, but made that good, and there was nothing criminal about it; that he drew all the checks to the payee in whose name he had opened an account at the state bank, so that he could deposit them there, but entered some of them in the voucher register under other names, so that the frequency with which checks were issued to that payee would not attract attention; that all of the checks were indorsed by Preston, in his own handwriting, with the name "H. Lindenmeyer & Sons, H. Lindenmeyer", before being deposited, and the treasurer and cashier of plaintiff company, under whose supervision Preston worked, knew his handwriting and recognized the indorsements as being in his handwriting as soon as they saw the backs of the checks; that the officers of plaintiff company who signed the checks were deceived by Preston, and believed at the time that the company owed to the payee therein named the amounts for which the checks were drawn; that when the canceled checks for each month, respectively, were returned by the defendant bank to plaintiff about the first of the next month, they were received by Preston, who assorted them according to numbers, and then the cashier checked the numbers and amounts against the numbers and amounts as recorded in the voucher register, Preston in each instance holding the checks and calling off such numbers and amounts; nobody but Preston saw the canceled checks, and they were not compared with the voucher register as to the names of payees, nor did any officer or employe of plaintiff except Preston look at the indorsements on the back of the checks; that on each check, besides what purported to be an indorse-

ment by the payee, was stamped an indorsement by the state bank at Indianapolis, Indiana, in which they were deposited, reciting "Prior indorsements guaranteed", and one by a national bank at Indianapolis through which the checks were collected; that after being so compared with the voucher register, the canceled checks payable to "H. Lindenmeyer & Sons" were removed from plaintiff's files, by Preston, who took them to his home, where some of them were lost or destroyed.

As applied to this evidence, the defendant asked the court to give each of certain instructions to the effect that (No. 7) if the plaintiff was not indebted to the payee named in these checks and had no business relations with it, the checks in legal effect were issued to a fictitious payee and were therefore payable to bearer; that (No. 6) if said facts existed and, at the times when the checks were issued, plaintiff knew, or by the exercise of reasonable care might have known, that it was not indebted to the payee and owed said payee nothing, and that it had no business relations with him, the checks were, in effect, issued to a fictitious person and payable to bearer, and plaintiff could not recover; and that (No. 9) if any of the checks were issued to the order of a fictitious and nonexisting person and such fact was known to the plaintiff at the time it issued any such checks, then the check or checks so issued were, in legal effect, payable to bearer, and it was not material whether or not the indorsement thereof was erroneous or forged. The court refused to give each of these requested instructions, and the question is properly presented for review whether or not such refusal was reversible error.

5. The statute does not give to checks the legal effect of being payable to bearer by reason of the single fact that they are payable to a fictitious or nonexisting person, or by reason of that fact with

the additional circumstance that, by the exercise of reasonable care, the maker of the check might have known such fact. The language of the statute is as follows: "The instrument is payable to bearer when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable." §9089i Burns 1914, Acts 1913 p. 120, §9. Even if "H. Lindenmeyer & Sons" was not the same as "Henry Lindenmeyr & Sons", but was a fictitious payee, this would not make the checks payable to bearer, unless "such fact was known to the person making it so payable," and the instructions Nos. 6 and 7, therefore, were properly refused. *Shipman* v. *Bank, etc., supra; Armstrong* v. *National Bank* (1889), 46 Ohio St. 512, 22 N. E. 866, 15 Am. St. 655, 6 L. R. A. 625.

But upon the evidence that plaintiff had never done business with a firm named "H. Lindenmeyer & Sons", and that it had done no business for eight months

6. with Henry Lindenmeyr and Sons at the time the first of these checks was drawn, nor thereafter, and did not owe anything to the payee named in the checks, and that its books showed that fact, except the voucher register, and that a confidential clerk, charged with the duties as stated, procured the checks to be drawn, wrote the name of the nominal payee on the back and negotiated them, defendant had a right to go to the jury on the question whether the fact that the checks were payable to a fictitious payee was "known to the person making them so payable." Defendant was not conclusively bound by the testimony to the effect that the officers who signed the checks were ignorant of such fact, however firmly convinced the trial judge may have been that the witnesses who so testified told the truth. The requested instruction No. 9 should have been given. *Snyder* v. *Corn Exchange N.*

*Bank* (1908), 221 Pa. 599, 70 Atl. 876, 128 Am. St. 780; *Phillips* v. *Mercantile N. Bank* (1894), 140 N. Y. 556, 35 N. E. 982, 37 Am. St. 596, 23 L. R. A. 584.

The court gave an instruction (No. 8) to which appellant (defendant) reserved an exception, as follows: "When a bank returns to the depositor his canceled checks and a statement of his account, the depositor has the right to assume that the bank, before paying the checks, ascertained that the indorsements of payees named therein were genuine, and the depositor is not required to examine the indorsements on the checks to ascertain if they are genuine."

It may be assumed that no duty was imposed on the plaintiff company in the first instance to know the signatures of payees in whose favor it issued checks, 7. or to examine the indorsements on the backs of returned checks to ascertain whether or not the bank had paid money on forged indorsements. *Los Angeles Inv. Co.* v. *Home S. Bank, supra; Jordon Marsh Co.* v. *National Shawmut Bank, supra; Pratt* v. *Union Nat. Bank, supra; Shipman* v. *Bank, etc., supra;* note 15 A. L. R. 166.

But, as applied to the evidence above set out, this instruction invaded the province of the jury. The law requires a depositor, upon the balancing of his account and return of his canceled checks, to exercise reasonable care in examining the account and checks, to know whether or not the balance shown to his credit is correct. And the depositor is charged with whatever knowledge he would have acquired by making such an examination in a reasonably careful manner. *First National Bank* v. *Farrell, supra; Leather Mfrs. Bank* v. *Morgan* (1885), 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; *National Dredging Co.* v. *Farmers' Bank* (1908), 22 Del. 580, 69 Atl. 609, 130 Am. St. 158, 16 L. R. A. (N. S.) 593; *Morgan* v. *U. S. Mortgage &*

*Trust Co.* (1913), 208 N. Y. 218, 101 N. E. 871, L. R. A. 1915D 741, Ann. Cas. 1914D 462; *Myers* v. *Southwestern Nat. Bank* (1899), 193 Pa. 1, 44 Atl. 280, 74 Am. St. 672; *Janin* v. *London & S. F. Bank* (1891), 92 Cal. 14, 27 Pac. 1100, 27 Am. St. 82, 14 L. R. A. 320; *First Nat. Bank* v. *Allen* (1893), 100 Ala. 476, 14 So. 335, 46 Am. St. 80, 27 L. R. A. 426; *First Nat. Bank* v. *Richmond Electrical Co.* (1907), 106 Va. 347, 56 S. E. 152, 117 Am. St. 1014; note 15 A. L. R. 159.

The court cannot say, as matter of law, that the exercise of reasonable care would or would not have included a comparison of the checks with books of the 8. plaintiff, an examination of which might have disclosed that neither the first nor second name of the firm in New York was correctly written in the checks, or that no purchases had been made by plaintiff from that firm, or that some of the checks were not entered in the voucher register as payable to the firm in whose favor they were drawn. Neither can it determine, as matter of law, that upon a hint of irregularity, by reason of facts shown by the evidence, in checks of which an employe who had once overdrawn his pay account had sole charge, the exercise of reasonable care on the part of the employer would not have called for an examination of what was on the back of the checks as well as what appeared on their face. What must be done to constitute due diligence under the circumstances shown by the evidence was a question of fact for the jury. *Critten* v. *Chemical Nat. Bank, supra; Morgan* v. *U. S. Mortgage & Trust Co., supra; Prudential Ins. Co.* v. *National Bank of Commerce, supra; Cole* v. *Charles City Nat. Bank* (1901), 114 Iowa 632, 87 N. W. 671; *Brown* v. *Lynchburg N. Bank* (1909), 109 Va. 530, 64 S. E. 950, 17 Ann. Cas. 119.

Having entrusted the examination to Preston, the delinquent clerk, except for checking the numbers and

amounts of the checks against a voucher register 9. prepared by Preston, plaintiff was chargeable with knowledge of whatever facts were thereby disclosed to Preston, which an examination in a reasonably careful manner would have disclosed to an honest clerk. *Critten* v. *Chemical Nat. Bank, supra; Leather Mfrs. Bank* v. *Morgan, supra; Myers* v. *Southwestern Nat. Bank, 'supra; First Nat. Bank* v. *Allen, supra; First Nat. Bank* v. *Richmond Electrical Co., supra;* note, 15 A. L. R. 162, 163.

It is true, as was stated above, that Preston was not acting within the scope of his employment when he procured the checks to be signed, purloined them, forged the indorsements and deposited them, but when the canceled checks were returned with a statement of account showing that they had been paid out of plaintiff's funds, and the duty of examining and approving or disapproving the account was delegated to him, whatever knowledge he obtained by making the examination was the knowledge of his employer. *Leather Mfrs. Bank* v. *Morgan, supra; Myers* v. *Southwestern Nat. Bank, supra; Critten* v. *Chemical Nat. Bank, supra; First Nat. Bank* v. *Allen, supra; Dana* v. *National Bank* (1881), 132 Mass. 156; *First Nat. Bank* v. *Richmond Electrical Co., supra; First Nat. Bank* v. *Farrell, supra;* note 15 L. R. A. 163.

The court also gave an instruction (No. 16), to which an exception was reserved by the defendant, that read as follows: "I instruct you that in this case the 10. knowledge of plaintiff's employe, Preston, that the indorsements on the checks in question were forgeries, if you find from the evidence such indorsements were forgeries, and were forged and made by said Preston himself, cannot be imputed to the plaintiff. In such event Preston would be the agent of the plaintiff, but he would not be its agent to retain its checks

drawn in favor of other persons, or to make forged indorsements thereon. In making such forged indorsements, if you find from the evidence that such forged indorsements were so made by Preston, he was not only acting without authority, but in fraud of his principal. And unless you should further find from the evidence that said plaintiff had, through some source other than Preston himself, acquired a knowledge of these forged indorsements, or acquired knowledge of facts from which it should have known, or had reason to know, that the indorsements were forgeries, it would not be chargeable with knowledge of such forgeries." So far as this instruction may be understood to declare that plaintiff was not chargeable with that knowledge of Preston's misconduct which he acquired while doing the unlawful acts complained of, it is not objectionable.

But when plaintiff delegated to Preston the performance of its duty in the matter of examining the canceled checks and statements of account returned by the bank, and he undertook that task, plaintiff was chargeable with knowledge of the facts shown by that examination, and, if such examination disclosed facts making it apparent that the checks were fraudulent and the indorsements forged, plaintiff would be chargeable with that knowledge. This instruction was erroneous.

Appellant asks that the verdict returned at the first trial be reinstated, for the alleged reason that the motion for a new trial which the court sustained is 11. not shown by the record to have been "presented to the court" within thirty days after the first verdict was returned. The record recites that on a day named, which was less than thirty days after the return of the verdict, "being the seventh judicial day of the January term * * * before the same honorable court * * * comes now the plaintiff by coun-

sel and files a motion for a new trial * . * * as
follows," (setting it out) ; and that thereafter the trial
court entertained and sustained the motion.    It was
filed in term, and, so far as the record discloses, may
have been handed to the judge at the time of filing.
Except so far as the record affirmatively shows error to
have been committed, all presumptions are indulged in
favor of the action of the trial court.    No question is
presented as to the interpretation of such a record entry
if the motion had been filed in vacation, and the trial
court, five months later, had rejected or overruled it,
and the question were one of upholding such action, as
in the cases cited by appellant.    The record does not
show affirmatively that an error was committed by what
was done.

Other questions discussed by counsel may not arise
upon another trial.

The judgment is reversed, with directions to sustain
the motion for a new trial.