Submitted on brief October 24, affirmed December 5, 1916.

## DOERSTLER *v.* FIRST NAT. BANK.*

(161 Pac. 386.)

**Banks and Banking—National Bank Examiner—Official of Bank.**

1. A national bank examiner is not an agent or officer of a bank which he examines.

**Estoppel—Persons to Whom Estoppel is Available.**

2. A statement to a national bank examiner by a depositor in reply to a question by the examiner as to whether loans by the president of the bank were authorized furnishes no basis for an estoppel in favor of the bank and against the depositor; the examiner not being an officer or agent of the bank.

**Banks and Banking—Liability of Bank for Acts of Officers.**

3. While a depositor in a national bank is presumed to know that the bank is without authority to lend his funds for his benefit as an individual, the president of a national bank, having made representations to an uneducated depositor that his deposit could be lent so as to be called within 30 days yet bring a fair rate of interest, cannot, the depositor understanding that the president was acting for the bank, make loans of the depositor's funds without rendering the bank liable.

[As to liability of banks for frauds of officers, see note in 39 Am. Rep. 760.]

**Trial—Instructions—Form of Instructions.**

4. An instruction submitting an issue to the jury need not follow the testimony of the witnesses if it accurately presents the situation.

**Trial—Instructions—Issues Presented.**

5. Where a depositor in a national bank sued for deposits which had been loaned by the president, contending that the president was

---

*Authorities discussing the question of liability of bank for acts of officers in excess of their powers are gathered in notes in 55 L. R. A. 751; 39 L. R. A. (N. S.) 174.

acting for the bank, while the bank contended that the president was acting individually, and that the depositor was estopped to assert liability against it, an instruction on the powers of national banks is not necessary; for the fact that the depositor attempted to authorize the bank to perform an *ultra vires* act in lending his money did not authorize the president to appropriate the funds and excuse the bank from liability for his misappropriation.

**Trial—Instructions—Assumption of Facts.**

6. In an action against a national bank to recover deposits, the bank contended that the depositor consented to the act of the president in loaning his deposits, and that he was estopped to assert the liability of the bank. The court charged that an estoppel is that by which a person by his own act which he has committed precludes him from asserting the truth. Other portions of the charge clearly showed that the court did not assume that plaintiff's testimony at trial was true, and that the statement on which the estoppel was based was untrue. *Held,* that the charge was not erroneous as assuming that plaintiff's testimony at trial was true.

**Estoppel—Equitable Estoppel—Definition.**

7. An "estoppel" may be defined as where a man is concluded and forbidden to speak against his own act or deed, though it is to say the truth.

**Appeal and Error—Review—Instructions.**

8. Where the instructions correctly present the law, a judgment will not be reversed for mere technical inaccuracies.

From Douglas: JAMES W. HAMILTON, Judge.

In Banc.  Statement by MR. JUSTICE McBRIDE.

This is an action by M. S. Doerstler against the First National Bank of Roseburg, a corporation, to recover the balance due on alleged deposits made in defendant bank.

The complaint alleged, in substance, that for many years prior to April 27, 1911, plaintiff had been a depositor of defendant bank, and that upon that date he had on deposit $5,365.90; that since said date defendant has paid him upon said deposit the sum of $6.90, and no more, leaving a balance due him of $5,359, for which he prays judgment, together with interest.

The answer denied that plaintiff had on deposit the sum stated, or that there was any sum whatever due him from defendant.  For a further answer defendant alleged that it was a duly authorized national bank;

that on June 17, 1911, it sold all its assets, except certain overdue notes and accounts, and its goodwill to the Douglas National Bank, which assumed the deposit accounts of defendant; that at said date plaintiff had on deposit with defendant the sum of $6.90, and no more, which the Douglas National Bank afterward paid him. There was also a plea of account stated. Another defense set forth was that plaintiff requested T. R. Sheridan, the president of defendant, to loan his money, and authorized him to withdraw it for that purpose, and that thereupon and long prior to the sale of the defendant bank to the Douglas National Bank Sheridan withdrew from the bank and loaned for plaintiff the following sums: $469 loaned to B. C. Agee, $1,700, to A. M. Kelsey, and $1,760, to T. R. Sheridan; that said sums, aggregating $3929, were all the funds of plaintiff deposited in the defendant bank, except $6.90 paid to plaintiff as aforesaid; that Sheridan, acting solely as the agent of plaintiff, took the notes of the parties to whom the loans were made, inserted them in an envelope, marking it with the name of the plaintiff, and placed them in the vaults of defendant for safekeeping at the request of and for the sole use and benefit of plaintiff; that these notes were never mingled with the securities of the bank, but were kept separate and apart in that portion of the vaults devoted entirely to the safekeeping of papers belonging to customers, being treated by defendant and its employees as private property, and in no sense as belonging to defendant. Then follows a plea of estoppel based upon the answer of plaintiff to a circular letter sent to him by R. W. Goodhart, United States bank examiner, which letter and answer *mutatis mutandis* are identical with the letter and answer referred to in

*Carlon* v. *First Nat. Bank,* 80 Or. 539 (157 Pac. 809), and are therefore not quoted in full.

The plaintiff filed a reply putting in issue all the new matter in the answer except that he admitted signing the answer to the letter sent him by the bank examiner. Concerning that matter his reply is as follows:

"That at all times mentioned in the complaint and answer in this case T. R. Sheridan was and is the duly elected, qualified and acting president of the First National Bank, and its chief executive officer, having the actual management and control of said bank; [that the business transacted between plaintiff and defendant was almost exclusively done through said Sheridan as the president, agent, and representative of said bank; that while plaintiff was a depositor of said bank, and prior to April 27, 1911, the said Sheridan, as president of defendant bank, informed plaintiff that the bank could lend some of the funds of plaintiff then on deposit in said bank, so as to earn for plaintiff 6 per cent per annum, and that at any time plaintiff desired to use said funds said bank could call them in upon 30 days' notice; that thereafter the said bank rendered to plaintiff statements of account showing that certain funds of plaintiff had been loaned by said bank, but said bank never informed plaintiff as to the names of borrowers of said funds, or the nature of any security taken, or the length of time any such loan was to run or of any other particulars regarding the same, and plaintiff believed from said statements and from the representations theretofore made to plaintiff through said Sheridan that said bank had loaned plaintiff's funds, and that plaintiff could at any time obtain such funds from said bank by giving 30 days' notice, and that plaintiff would receive interest upon said funds; that said bank never delivered to plaintiff any promissory note or other security or evidence relating to any such alleged loans, and plaintiff was thereby led to believe, and did believe, that all securities taken for any such alleged loans were taken in the name of said bank, and plaintiff, because of said representations of

said Sheridan, did not expect said bank to turn any such security or securities over to plaintiff, but plaintiff was at all times led by said bank to believe and did believe that plaintiff was simply to look to said bank for his money; that because of the foregoing facts, when plaintiff received from said bank statements showing that some of plaintiff's funds had been loaned, plaintiff made no objection, but relied upon the said representations;] that when the defendant bank ceased business in June, 1911, it was stated by the officers of the defendant bank and the officers of the Douglas National Bank of Roseburg, Oregon, that the said banks had consolidated, and for that reason plaintiff believed that the consolidated bank would still be responsible for his funds, and did not learn until long afterward that the defendant bank had really gone out of business, and that the pretended consolidation was not a consolidation in fact, but that the said Douglas National Bank had simply taken over certain securities formerly held by the defendant bank, and had become responsible for certain specific deposits of the defendant bank; [that the plaintiff never learned until long after the closing of the defendant bank that it was claimed by the said bank or by said Sheridan that the said Sheridan had personally taken plaintiff's funds in the manner set forth in defendant's answer herein; that plaintiff never ratified or acquiesced in said alleged taking of his funds; that plaintiff never in any way authorized the said Sheridan to withdraw any funds whatever from plaintiff's account in said bank;] that while plaintiff's account with defendant bank was active, and while said bank was going into liquidation, plaintiff resided in Curry County, remote from any railroad communication, said bank being located at Roseburg, [and plaintiff was not informed as to the condition of said bank or as to the fact that it was going into liquidation, but at all times believed said bank to be a strong, wealthy institution, and its officers and managers thoroughly honorable and responsible;] that plaintiff is informed and believes, and therefore alleges, that B. C. Agee and A. M. Kelsey, who are mentioned in the defendant's answer herein as

persons to whom the said Sheridan loaned some of the
funds of plaintiff, were at the time of said alleged loans
business associates of the said Sheridan, and if the
said Sheridan paid into the hands of said Agee or said
Kelsey any of the funds of plaintiff, it was done largely
for the personal benefit of said Sheridan and done with-
out the knowledge and consent of plaintiff; that plain-
tiff never directly or indirectly authorized the said
Sheridan as an individual to lend any of the plaintiff's
funds or withdraw any part thereof from defendant
bank for any purpose, [and never authorized said
bank to so dispose of plaintiff's funds that he would
no longer be able to look to said bank as responsible
for the repayment of same, but the only arrangement
as to the lending of plaintiff's money which plaintiff
ever made with defendant bank was that defendant
bank, in consideration of defendant bank's putting a
part of plaintiff's money to work to earn interest, that
plaintiff would not call for the same except upon 30
days' notice to defendant bank;] that in the month of
June or July, while plaintiff was on a visit to Hagers-
town, Indiana, plaintiff received the letter set out on
page 5 of said answer, of R. W. Goodhart, national
bank examiner; that neither at the time of the receipt
of said letter nor until long afterward did plaintiff
receive any notice or knowledge that the defendant
bank was liquidating its affairs or proposed to go out
of business, [and when said letter was received by
plaintiff, plaintiff assumed that the same was a mere
banking formality, did not carefully read the same,
and did not understand that the object thereof was to
cause plaintiff to release the defendant bank from re-
sponsibility for said alleged loans;] that the statement
appended to said letter which was signed by plaintiff
was prepared by said Goodhart, ready for plaintiff's
signature, [and plaintiff signed the same without un-
derstanding the real meaning thereof; that plaintiff
supposed that by signing said letter he was simply rati-
fying the making of loans from plaintiff's funds by
defendant bank under the arrangement hereinbefore
mentioned, and that plaintiff would still have the right

at any time upon 30 days' notice to demand said funds from said bank; that the plaintiff received his early education in the German language, his knowledge of the English language is limited; that he is unacquainted with banking methods and business forms generally, and when he signed said statement did not understand that the language of said statement had the meaning which it is now alleged is conveyed thereby; that plaintiff never intended to release defendant bank from liability for any of the funds which he had deposited with said bank, but only intended to ratify any loans which said bank had made to the extent that plaintiff would not seek to withdraw any of said funds without 30 days' notice; that plaintiff is informed and believes, and therefore alleges, that the said Goodhart at the time of writing said letter to plaintiff knew that said bank's affairs were not in sound condition, and knew that the said T. R. Sheridan, its president, was in failing circumstances, and had been withdrawing from the accounts of various depositors of said bank large sums of money for the personal use or benefit of said Sheridan, under pretense of making loans therefrom, and the said Goodhart at all times concealed said knowledge from this plaintiff, and plaintiff long after the receipt of said letter believed said bank to be a sound and responsible financial institution and its officers reliable and trustworthy; that the said Goodhart thereby deceived plaintiff by his silence, and caused plaintiff to sign said statement without carefully investigating the meaning thereof; that had plaintiff been advised as to what the facts were, that said bank was going into liquidation, and that said Sheridan's conduct as president of said bank had been irregular or corrupt, plaintiff would not have signed said statement without taking legal advice so as to know the true meaning thereof; that said statement did not express plaintiff's true intent or meaning, and the signing thereof was due entirely to misapprehension and deception;] that in truth and in fact the alleged loans mentioned in said answer were really misappropriations by said Sheridan of the funds of said bank, and said Sheridan fraudu-

lently concealed the real character thereof, [as said Goodhart well knew when he addressed said letter to plaintiff, and as the directors and other officers of said bank knew or could have known had they examined or scrutinized the affairs of said bank and the conduct of said Sheridan as president, as it was at all times their duty to do]."

Defendant moved to strike out all those portions of the reply above quoted which are included in brackets, but the motion was overruled. Upon the trial defendant excepted to certain instructions given by the court and to the refusal of the court to give instructions requested by defendant. These matters will be noted in the opinion. There was a trial and verdict for plaintiff, and defendant appeals.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

AFFIRMED.

For appellant there was a brief over the name of *Mr. Oliver P. Coshow.*

For respondent there was a brief over the name of *Mr. B. L. Eddy.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. Many of the questions raised on this appeal have been settled in previous cases arising between the defendant and other depositors. The motion to strike out portions of plaintiff's reply to defendant's plea of estoppel was properly overruled. As held in *Carlon* v. *First Nat. Bank,* 80 Or. 539 (157 Pac. 809), and *Verrell* v. *First Nat. Bank,* 80 Or. 550 (157 Pac. 813), the bank examiner was not the agent of the bank, and no statement to him would estop the plaintiff from

asserting the facts in an action between him and the bank.

2. The plaintiff, however, assuming the facts to be well pleaded, replied by showing that he was not in possession of all the facts when he signed the certificate requested by the bank examiner, and, while the matter pleaded is somewhat prolix, we think it is relevant. The circumstances were not fully and fairly stated in the letter written by the bank examiner, and the certificate at the bottom which plaintiff was requested to sign was evidently framed so as to entrap the plaintiff into an affirmative answer. He was requested to sign if the statement appended was correct. It would have been but fair if the examiner had fully stated the exact condition of affairs as between the bank and Sheridan, and then asked the plaintiff to write a reply instead of making a partial statement of the circumstances and confining plaintiff to a ''yes or nothing'' answer. The other questions raised upon the testimony are discussed in the cases above cited, and need not here be considered.

3. Taking the plaintiff's testimony as a whole, it tends to show that he was dealing with Sheridan as a representative of the bank, and supposed that it was the bank which was to loan his money for him. Granted that he was presumed to know as a matter of law what neither laymen nor lawyers usually know as a matter of fact, namely, that the bank could not loan his money for him, it does not follow that one of the officers of the bank had a right to use his official position and the bank's apparent responsibility as a false token to get plaintiff's money. No doubt, the method by which the bank would draw the money when a loan was made was rather hazy in his mind, as his letters introduced in evidence show that he is an un-

educated, ignorant rancher. He knew that the bank had his money and was responsible, and the president of the bank in its place of business told him that he could loan it for him at 6 per cent. To him, as to most ignorant people, the president was the bank. As he expresses it in his crude way, "I supposed the bank would be security for the money"; that is, he supposed that he was dealing with the bank, and that it was responsible and able to replace his money within 30 days if he called for it. Had he presented a certificate of deposit for payment and Sheridan had said to him, "I will pay the certificate next week," neither he nor anyone else would have understood that Sheridan intended to pay it out of his own pocket, and when Sheridan said, "I will loan your money and pay you 6 per cent interest," he naturally supposed that Sheridan was speaking for the bank, and no doubt Sheridan intended that he should so believe. Assuming that there was technical error in the instructions, we would still be disposed to affirm the judgment under the provisions of Article VII, Section 3, of our Constitution as amended; but there is no reversible error if we take the instructions as a whole.

4. The first objection to the instructions is that the court, in stating what the plaintiff claimed, used the following language: "And that Mr. Sheridan told him [plaintiff] that he would lend the money for him at a premium." Whereas the plaintiff had actually employed this language: "So he told me he would loan it out for me and give me 6 per cent interest." The court was not attempting to quote the testimony *verbatim,* but in a general way to call the attention of the jury to the issue between the parties, and the use of the word "premium" instead of "6 per cent interest" could not mislead the jury.

5. It is next objected that the court did not give an instruction correctly defining the limitations upon the powers of national banks. There was no occasion for such an instruction under the pleadings or evidence. The plaintiff's contention was that he had deposited his money in the bank, and the bank had refused to repay him. The defendant's contention was that plaintiff had authorized Sheridan personally to draw it out and loan it, and that he had drawn it out pursuant to such authority. The plaintiff takes issue here, and claims that he did not authorize Sheridan personally to loan the money, but that such authority was given the bank, and that Sheridan, the principal officer of the bank, drew it out and misappropriated it. If plaintiff made Sheridan his agent to loan the money and withdraw it from the bank for that purpose, and he did so, the bank is not liable, and the court, in effect, so instructed. If he attempted to make the bank his agent, and its president drew out the money and misappropriated it, no matter what the bank's limitations as to lending money for others may be, it is liable for the money so unlawfully withdrawn. It does not follow that, because plaintiff attempted to give the bank authority to do an act in relation to his deposit that was *ultra vires,* an officer of the bank could withdraw an amount of money equal to plaintiff's deposit, charge it up against plaintiff, and convert it to his own use. As remarked by Judge DEADY in *United States* v. *Randall,* 1 Deady, 524, Fed. Cas. No. 16,118, where a postmaster was convicted of stealing gold-dust from the United States mails, and the contention was made that gold-dust was not mailable matter. "Because gold-dust is not mailable, it does not follow that it is not stealable." So here it does not follow that because the bank had no right to act as a broker for plaintiff, and

his alleged authorization of it to do so was void, the president of the bank could steal an amount and cover the theft by charging it against plaintiff's balance, and thereby relieve his bank of liability. Whether the bank under the circumstances could lawfully have loaned the money for plaintiff is a matter of no importance. It says that it did not loan it, and plaintiff says it did loan it, so the whole question comes down to this: Did plaintiff authorize Sheridan personally as his agent to draw out and loan the amount of his deposit? This the court left to the jury, and it has found that he was not so authorized.

6, 7. Exception is taken to some language used by the court in instructing the jury upon the law of estoppel. There are some expressions in this part of the charge which taken alone might seem to have a tendency to mislead, but when considered with the context this cannot be said to be their effect. The whole of the court's charge on that subject is as follows:

"The defendant then also, as I have already told you, has pleaded that which is denominated as estoppel. And you will remember the fact alleged with regard to that particular defense is this: That upon the inspector, Goodhart, sending to the plaintiff a letter making inquiry as to the matter of these particular charges against his account, he answered as has already been read to you with regard to it. And it is alleged in the answer that for this reason the plaintiff is estopped; that is, by his own answer. What is meant by that is that he is prevented from asserting his right or his claim to this particular money, because he made the answer which he did, and it becomes necessary for me, gentlemen, to explain the law applicable to that particular feature of the case, and it is also quite an important matter of the law for you to consider in applying it to the facts in this case. I cannot better illustrate the proposition of estoppel, gentlemen, than by this: We will suppose that one of you jurors

owned a horse, and another person, a third party, came by and made a bargain with yet someone else for the horse, in your presence, the horse being yours, and you stood by and allowed the purchaser to pay his money for your horse and take it, supposing that it belonged to the seller, whereas, in truth and in fact, it belonged to you; the law says that under such circumstances as that, although the horse belonged to you in fact, you could not now assert it, because it would be fraud and imposition upon the person who was led to pay his money for the horse when you by acting at the time could have prevented it. And the law says that an estoppel is that in which a person by his own act which he has committed precludes himself from asserting the truth; and what they intend to say by this answer is that the plaintiff in this case, being asked at the time as to the facts in the matter, that he did not assert the truth, that is, contrary to what he now says, and for that reason he is estopped to state the truth, that is, to recover the money. Plaintiff says it belonged to him, he did not authorize Sheridan to make this loan to himself or these parties, and says he was dealing with the bank. They say that he should have said that at that time. Now, as to that, gentlemen, I state to you that if you find under the law as I shall give the same to you in this case that the plaintiff has deposited the money as claimed in this bank, and that there is still due him an amount of money, if you find that under the law as I shall give it to you, applying it in this case, then he is not estopped in this case to assert his rights and to recover whatever you may find to be due him. This letter, which you have seen and which has been admitted—the plaintiff admits that he made this answer—is allowed to go before you, and you have the right to consider it. It is in the nature of a declaration made by him, you giving it such credit as you may deem it to be worth, and, after applying it, taking the answer he has made and all of the circumstances in the case, you find that the evidence is with the plaintiff, that the facts are as he claims them to be in regard to that contract or the authority which was given to the bank, then, notwithstanding the fact that he may

have written the letter and which he admits that he did, he still would be entitled to recover what you find due him in this action.   The reason for that is that the bank inspector did not represent the bank.   And it is not in evidence that the bank in any way changed its position by reason of any answer that the plaintiff made.   And so I say to you that so far as being estopped, conclusively estopped, to assert the claim which the plaintiff is making in this action, he is not estopped by the fact that he has written that letter; but if you should find from the evidence, and you have a right to consider the letter for that purpose, that he authorized Sheridan to make the loan or loans, and that the dealing was as claimed in defendant's answer as set forth, if you find that fact by preponderance of the evidence, then the plaintiff could not recover in the case.   And I instruct you in connection with that fact that you have a right to consider the transaction, where it took place, the manner of dealing, under the circumstances, dealing with the bank, and then make up your mind from all of the evidence in the case as to whether or not the plaintiff authorized Sheridan to take this money from the bank, or whether he gave authority to the bank to lend his money as he stated.   And I instruct you that, if he did authorize the bank to lend his money, that would not authorize Sheridan or any officer of the bank to appropriate his money.''

In defendant's view of the case the vice of this instruction, the sting in the tail of the scorpion, so to speak, is embodied in these words:

''And the law says that an estoppel is that in which a person by his own act which he has committed precludes him from asserting the truth; and what they intend to say by this answer is that the plaintiff in this case, being asked at the time as to the facts in the matter, that he did not assert the truth, that is, contrary to what he now says, and for that reason he is estopped to state the truth, that is, to recover the money.   Plaintiff says it belonged to him, he did not authorize Sheridan to make this loan to himself or these parties, and

says he was dealing with the bank. They say that he should have said that at that time."

If we substitute the word "fact" for "truth," the instruction would substantially conform to Mr. Bouvier's definition of an estoppel, which he declares to be primarily:

"The preclusion of a person from asserting a fact by previous conduct inconsistent therewith on his own part, or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question."

While this definition may cover many instances, it is too narrow to cover all. A more comprehensive one is given in *Demarest* v. *Hopper*, 22 N. J. Law, 599, quoted with many others of like character in 3 Words and Phrases under this title:

"An estoppel is where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth."

Standing alone, that part of the definition given by the court in the instant case would be misleading, but, taking the whole instruction together, it is apparent that the court did not assume the truth of the statement made by plaintiff upon the witness-stand in explanation of his contradictory statement made to the bank examiner. For instance, the court said in defining estoppel:

"What is meant by that is that he [plaintiff] is prevented from asserting his right or his claim to this particular money because he made the answer which he did."

—referring to plaintiff's answer to the Goodhart letter, and again:

"Plaintiff says it belonged to him; he did not authorize Sheridan to make the loan to himself or these

parties.   They say he should have said that at that time.''

Further, it will be seen from that part of the charge first quoted that the court, while holding, as this court held in previous cases, that the letter was not technically an estoppel, instructed the jury in effect that they could consider it for the purpose of determining the question as to whether the plaintiff had, in fact, authorized Sheridan to withdraw the money, and that, if they found such to be the case, the plaintiff could not recover.   The effect of the whole charge upon this subject was to submit to the jury the question of the truthfulness of his statements made in the letter to the bank examiner.   We do not think that, considered as a whole, the instruction contains reversible error or that the jury could have been misled by it.

8. Other objections are urged to expressions used by the court in its instructions, but, in our opinion, they go merely to their technical accuracy.   If in the hurry of a *nisi prius* trial every word and sentence were weighed by this court with an eye singled to discover technical defects, there would be scarcely a law case brought here which would not be reversed, but such is not the duty of an appellate court.   Here the question is: Were the issues fairly and fully given to the jury, was the law correctly stated to them, and if it transpires that the charge is in any respect inaccurate, was such inaccuracy of such a character that it might have changed the result of the verdict?   We do not find such a state of affairs in this case.   As we view it, there was but one question for the jury to decide, and that was whether the plaintiff authorized Sheridan as an individual and as his agent to draw against his deposit in the bank and to loan the money so withdrawn.   If he did not, he should recover, and

the verdict was right; and this issue, as well as the rules by which the evidence should be weighed, were, in our opinion, fairly stated without substantial error. The judgment is affirmed.        AFFIRMED.