## SMITH v. FIRST NAT. BANK OF CASSELTON, N. D.[*]

(Circuit Court of Appeals, Eighth Circuit. September 27, 1920.)

No. 5561.

1. **Banks and banking** ☞261(4)—**In action for deceit against national bank, ultra vires no defense.**

A national bank *held* liable for deceit, where its president, who transacted its business, purporting to act for the bank, sold to plaintiff a note and real estate mortgage, and received payment by drafts payable to him as president, when in fact the bank did not own the note and mortgage, and did not deliver them, although it did not receive the purchase money,

and although plaintiff knew it had no authority to make such loans, either for itself or as broker, where he had previously during several years purchased such loans from it, through its president, in the same manner.

2. **Banks and banking ☞261(4)—In action for deceit against national bank, ultra vires no defense.**

In such case, the action is not one to enforce an ultra vires contract, but in tort, and plaintiff's right arises out of the fact that the bank held itself out as having such loans for sale, and as negotiating them through its president, and is therefore liable for his acts and statements in such negotiations.

3. **Estoppel ☞90(2)—Acts not prejudicial do not raise equitable estoppel.**

Where a national bank sold a note and mortgage, which it did not own and could not deliver, subsequent negotiations between the purchaser, the president of the bank, and the actual owner of the note and mortgage, by which the purchaser obtained the same, thereby reducing his loss, and consequently the liability of the bank, held not to estop him from maintaining an action against the bank for the deceit.

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Action by Frank M. Smith against the First National Bank of Casselton, N. D. Judgment for defendant, and plaintiff brings error. Reversed.

A. W. Cupler, of Fargo, N. D. (Ed. Pierce and B. G. Tenneson, both of Fargo, N. D., on the brief), for plaintiff in error.

Matthew W. Murphy, of Fargo, N. D. (Aubrey Lawrence, of Fargo, N. D., on the brief), for defendant in error.

Before HOOK and STONE, Circuit Judges, and JOHNSON, District Judge.

STONE, Circuit Judge. Error by plaintiff below from adverse judgment in suit for deceit. Smith was a money lender living in the state of New York. The bank was a national bank located in the town of Casselton, N. D. The amended petition alleges that the bank, through its president, R. C. Kittel, represented to Smith that it had a note for $30,000 secured by a mortgage on North Dakota land, and that it offered this loan to him for sale at a discount of $1,500; that he relied upon the above representations and purchased the loan, paying therefor $28,695.15; that the bank, through Kittel, converted this sum; that it never had the note or mortgage; that the note and mortgage were in fact owned by a business company (the Northern Trading Company), and then were pledged as collateral by it for a loan to a Minneapolis bank; that to protect himself from loss he was compelled to and did pay the pledgee $15,198.65, and thereby secured the note and mortgage and other security; that thereafter he was paid about $8,000 of this $15,198.65, leaving a balance of $7,198.65, for which this suit was brought. The theory of the petition is fraud and deceit by the bank, in representing falsely that it had the note and mortgage. The bank pleaded the general issue, novation and compromise, waiver and estoppel, election of remedies, offset and counterclaim, and ultra vires. The issues concentrated on the liability of the bank for the acts

of Kittel, and the effect of a contract made between Smith, Kittel, and the Northern Trading Company, by which Smith secured the note and mortgage from the Minneapolis bank, and also bonds which netted him the $8,000 payment referred to in the amended petition.

The pertinent facts follow: The bank was capitalized for $50,000, and had a surplus of $10,000. R. C. Kittel was its president, and personally conducted the business of the bank. For years it had conducted two classes of business respecting loans on real estate: First, it made such loans, later selling them to buyers; and, second, it brought together persons desiring loans upon real estate security and persons who made such loans. The first was a loan business; the second, a brokerage business. It charged a commission in such cases. R. C. Kittel was the president of the bank; he was also vice president of the Northern Trading Company, and was engaged in the loan brokerage business on his own account. Smith, and his father before him, had for some years bought loans offered by the bank, acting through Kittel. He knew the capitalization and surplus of the bank; that it had no authority to make a single loan of $30,000; that it did a brokerage business in real estate loans; that it had no authority to do such business; that Kittel did an individual loan brokerage business, and that he was vice president of the Northern Trading Company. This loan was submitted in January, 1914, by Kittel, who signed the letter "R. C. Kittel, President," although his reference to possession and control of the loan is, in this and subsequent letters, in the singular, such as, "I have a first mortgage note. * * * " Smith's letters were addressed to "R. C. Kittel, Pres. First National Bank, Casselton, N. D." Smith accepted the loan February 4, 1914, saying he would have the loan assigned to his sister. Kittel, in acknowledging this letter, said he would have that assignment made at once and shown on the abstract of title sent to Smith. Smith made payment through drafts to the order of "R. C. Kittel, President." These drafts were deposited by Kittel to the credit of the Northern Trading Company, and the proceeds used by it. The bank used none of the money and received no commission or compensation of any character in connection with the loan. The note and mortgage were never in possession of the bank, but were, at the time Smith accepted the loan and thereafter, pledged by the Northern Trading Company with a Minneapolis bank as collateral for a loan made to the Trading Company.

On March 5, 1914, 18 days after the final payment by Smith, he examined the abstract for the property, which had been received after the above final payment. It showed the loan made by the Northern Trading Company, with no assignment to or title ever in the bank. From this date, early in 1914, Kittel postponed sending the loan papers. In November, 1915, Smith became suspicious of the loan, but never at any time before this suit was brought communicated with any other official or director of the bank concerning it. December 6, 1915, the bank went into receivership. Ascertaining that the loan papers had been deposited by the Northern Trading Company with the Minneapolis bank as collateral security for a loan, Smith executed a contract, dated February 1, 1916, with the Northern Trading Company and Kit-

tel. This contract recited that Smith had bought the $30,000 note and mortgage from the Northern Trading Company and Kittel, and had later ascertained that they were pledged to the Minneapolis bank, which then held it for a balance of $15,098 due on its loan; it then provided that upon payment by him to the Minneapolis bank of this balance of $15,098 he was to have the $30,000 note and mortgage; that, for the purpose of repaying Smith the above outlay of $15,098, the Trading Company and Kittel agreed to deliver to him $8,000 of the Trading Company bonds, and, if possible, the conveyance of an incumbered half section of land; that, if said conveyance of land be procured, it would be received by Smith as full payment of the balance paid by him to the Minneapolis bank; that, if such conveyance be not made, then the amount due because of the payment to the Minneapolis bank to be reduced $8,000, represented by the bonds. No conveyance of the land was made. Smith realized the face value of $8,000 from the bonds, and, on foreclosure, secured full payment of the mortgage note.

[1, 2] This is an action for deceit. The trial court, jury having been waived, ruled for defendant on these grounds: that, as such transactions were ultra vires and, both impliedly and actually, known by Smith to be such, no action for deceit in connection therewith could be maintained; that the only basis of recovery in such ultra vires transactions would be for money had and received, but that such action was not here maintainable, because the bank had received no money nor profit; that the conduct of Smith in relation to the contract, under which he obtained the loan papers from the Minneapolis bank, amounted to a waiver and an estoppel in favor of the bank. The loan would have been ultra vires if made by the bank, because of the amount involved, or, if it was a brokerage transaction, because national banks have no power to engage in the brokerage business. This was both impliedly and actually known by Smith, and he also knew that this loan was of such character. But he is not here trying to enforce the contract. This action is in tort for deceit. It is based upon the claim that Smith sent money to the bank in reliance upon the representation by an officer of the bank that it had a certain loan for sale, when such statement was known by said officer to be false. Whatever Smith did was with the knowledge that the bank had for years engaged in making and brokering real estate loans. He had, for years, bought such loans from the bank, two of which were in excess of the bank's lending power, and one of which was larger than $30,000. In all of these loan sales to him, Kittel had conducted the negotiations for the bank. The bank had thus held itself out to him as having such loans for sale and as negotiating them through Kittel. It is, therefore, responsible, in tort, for the acts and statements of Kittel in such negotiations. If Kittel knowingly stated falsely that the bank had such a loan for $30,000, and if Smith parted with his money relying upon that statement, and sent that money to Kittel as an officer of the bank, then there was a fraud upon Smith, for which both Kittel and the bank were liable.

[3] This liability is not affected by the subsequent arrangement between Smith, Kittel, and the Northern Trading Company, through

which Smith gained possession of the note and mortgage. That arrangement was but a laudable effort by Smith to reduce his loss. There is no element of estoppel based upon this arrangement, for the bank never knew of it and did not act upon it; nor is it shown how it could have affected the action of the bank, then in receivership, had it known. It resulted beneficially to the bank by reducing its liability for nondelivery of a note and mortgage proven to be worth $30,000, the face value, to $7,198.65.

With directions to grant a new trial, the judgment is reversed.

HOOK, Circuit Judge, concurs in the result.