## WASMANN et al. v. CITY NAT. BANK OF KNOXVILLE, TENN.

### No. 5751.

Circuit Court of Appeals, Sixth Circuit.
June 17, 1931.

On Rehearing, Oct. 6, 1931.

T. G. McConnell, of Knoxville, Tenn. (Frantz, McConnell & Seymour, of Knoxville, Tenn., on the brief), for appellants.

J. A. Fowler, of Knoxville, Tenn. (H. G. Fowler and S. F. Fowler, both of Knoxville, Tenn., on the brief), for appellee.

Before DENISON, and HICKENLOOPER, Circuit Judges, and WEST, District Judge.

WEST, District Judge.

Two actions by husband and wife were consolidated and tried together. Originally they were for the fraudulent conversion of notes or their proceeds, the notes alleged to have been sold to plaintiffs by defendant or its predecessor the Knoxville Savings Bank, acting through one Haun, who was cashier of both institutions, and held for collection as shown by receipts made out on bank stationery, executed by the cashier.

During trial, the declarations were amended to charge further that the cashier's representations respecting the sale of notes and their retention for safe-keeping and collection were falsely made to induce plaintiffs to part with their money which was fraudulently appropriated by the bank through its officer. At the conclusion of all the evidence, the court directed a verdict for the defendant. It was of opinion that the transactions were beyond the power of the banks and outside the scope of the cashier's authority, and that plaintiffs were charged with knowledge of this and of the fact that, in transferring funds from their accounts to his own and issuing receipts, Haun could not act as agent for the banks.

The record discloses that plaintiffs were depositors in the savings bank and later in that of defendant for many years, and had a number of transactions relative to lending their money, always with Haun, in whom they reposed great confidence. While he was an

important figure in both institutions, he did not exercise exclusive control, and they were not "one man" banks. The evidence tends to show that Mr. Haun advised these ostensible loans as a means of securing for plaintiffs a greater return on their money than the banks would pay on deposits.

Mrs. Wasmann's claim grows out of two pretended loans and notes; one of $2,000 to W. T. Blackard in 1917, while Haun was with the savings bank, and for which she holds a receipt of the bank by its cashier, acknowledging possession of the note. And one of $2,000 to R. H. Jenkins, while Haun was cashier of the defendant. For this she holds Haun's receipt as cashier, on defendant's stationery.

Mr. Wasmann's case concerns ostensible loans to Underwood $4,000, Richards $5,000, and George $4,000; and he also holds receipts for such notes on defendant's stationery, signed by Haun, cashier.

The evidence tends to show that no such notes ever existed. The plaintiffs testified that in their dealings they regarded Haun as the representative of the bank whose cashier he was at the time, and supposed they were doing business with the bank and not with Haun individually.

National banks have no power to engage in brokering loans for their depositors. Yet they have frequently been held liable for frauds of their officers in making or pretending to make such loans. Chapman v. First Nat. Bank, 72 Or. 492, 143 P. 630, L. R. A. 1917F, 300; Verrell v. First Nat. Bank, 80 Or. 550, 157 P. 813; First Nat. Bank v. Peck, 180 Ind. 649, 103 N. E. 643; L'Herbette v. Pittsfield Nat. Bank, 162 Mass. 137, 38 N. E. 368, 44 Am. St. Rep. 354; First Nat. Bank v. Anderson, 172 U. S. 573, 19 S. Ct. 284, 43 L. Ed. 558; Doerstler v. First Nat. Bank, 82 Or. 92, 161 P. 386; Smith v. First Nat. Bank (C. C. A.) 268 F. 780.

The trial court was of opinion that no evidence was produced from which the jury would have been justified in holding defendant liable for acts of Haun done within the scope or apparent scope of his authority as cashier and agent of the banks. We are not able to agree with this view.

■ When notified by Haun that he had found a desirable loan, the plaintiffs, after some investigation, or at least discussion, generally turned the required amount over to him. This was done by checks not produced, but presumably payable to Haun, either personally or as cashier, or by means of charges against the depositors' accounts. In the Jenkins matter Haun drew a so-called customer's draft for $2,000 to the order of the defendant bank, to be charged to the account of Mrs. Wasmann, and the books disclose this amount credited to Haun's account the same day. In the Underwood transaction he issued a debit slip for $4,000 signed "National City Bank by Haun" and marked "Loan" and "Debit E. C. Wasmann"; and, while the evidence as to just how he got his hands on this sum is not as clear as in the case of the $2,000, the inference is strong that it was through this manipulation of the depositor's account. Both draft and debit slip were marked "Paid" and returned as canceled vouchers. They carried no notice of any proposed misappropriation, and bore no indication of fraud. True, plaintiffs expected Haun to take their funds, and had he employed the moneys in the purchase of securities as authorized, would have no claim on the bank, so far as these particular acts are concerned. But we think that, if Haun made out and used these vouchers to get possession of the funds in order to misappropriate them, there may be a liability against the defendant. For in making the transfers the cashier acted as such; he could assume no other character. In causing the debits to be made against the plaintiffs he acted within his general authority as cashier and for the bank, and was not and could not be dealing with the bank as agent of the plaintiffs. On principle, these transfers resemble the act of the vice president in drawing a draft in the name of his bank and forwarding it with stolen bonds for collection, for which the bank was held responsible in the case of Kean v. Nat. Bank, 294 F. 214 (C. C. A. 6). Here, as there, the officer "was not purporting to deal with the bank as a stranger, but purported to act, and did act, in his representative capacity, as agent, in the name of the bank." Page 223 of 294 F.

■ Respecting the supposed loans to others than Jenkins and Underwood, where it appears that plaintiffs turned their funds over to Haun by checks payable to him, the evidence of his agency is not so strong, for in presenting and cashing such checks he might have dealt with the bank as any outsider, and, if the only testimony was the cashing of the checks and his failure to make the investments expected, we could not say that the court's action as to these transactions was erroneous. But there is the further evidence of receipts executed by Haun as cashier of the banks, in which it is stated that the notes

were held for safe-keeping and collection, an ordinary bank service and one often performed by the banks. Defendant relied upon its want of power as a national bank, the fact that its books disclosed nothing respecting the notes, and that it could not be shown to have expressly authorized the transactions or profited from them.

Should a jury accept plaintiffs' theory that no loans were made or intended, the question of the power of the banks to lend the funds becomes of no importance. The state of the books should not be conclusive against the plaintiffs, who had nothing to do with the accounts. And it is quite possible for an official to fasten liability upon his bank by active fraud and bad faith, when engaged within the apparent scope of his authority.

We think there is involved here, as in National City Bank v. Carter, 14 F.(2d) 940 (C. C. A. 6), but not in the Kean-Bank Case, the fundamental duty of the banks to keep their depositors' money faithfully for their benefit. To refrain from securing plaintiffs' funds upon a false pretense and from misappropriating them, was not merely within the scope of the cashier's authority, but was his first duty in the business intrusted to him. In his individual capacity and with their consent he could lend their money without making the banks responsible. But if from the outset Haun intended to perpetrate a swindle, to secure and use the deposits instead of lending them, then in so securing them he acted in the capacity of cashier under color of his position, and not as agent of the plaintiffs, and the defendant is liable. The means he employed to get the funds would not be important. The fraudulent purpose to be served would be the same whether the plaintiffs' checks, or drafts and debit slips issued by the cashier, were used; and in either case the bank would be liable for having failed in its duty to protect the deposits.

Should the jury find that loans were not made, the further question would arise whether, in securing the transfers to his own account, Haun had the then present intention of using the funds for his own purposes. If he had, his acts violated his official duty to protect the deposits. If not, if the intent to defraud was not conceived until he had the money under his personal control and his official duty respecting it had ended, no such violation resulted.

We do not by any means say that with respect to moneys secured by Haun upon plaintiffs' checks his original intent was fraudulent and his object the misappropriations claimed. But we think certain of the evidence and circumstances warranted such inferences being drawn, and that the case should therefore have been submitted to the jury.

■ If the Knoxville Savings Bank was liable to Mrs. Wasmann in the Blackard matter, that liability may have been assumed by the defendant as any other obligation of the purchased bank, and, while the subject was not very fully covered, there is some evidence of this assumption. In May, 1918, defendant acquired the stock, assets, and accounts of the savings bank. According to testimony not denied, the defendant's president stated that it had bought and liquidated the savings bank. That meant that it had undertaken to wind up the affairs and pay off the obligations of the purchased bank. Fleckner v. United States Bank, 8 Wheat. 338, 362, 5 L. Ed. 631; Richmond v. Irons, 121 U. S. 27, 61, 7 S. Ct. 788, 30 L. Ed. 864.

■ Appellee contends that the appellants did not plead concealment of the alleged fraudulent misappropriations and that consequently the actions were barred by the statute of limitations. The declarations charge conversion of notes, but by amendment during trial the claim was advanced that no loans had ever been made or notes taken, and a reasonable inference from the language of the amendment made under the circumstances is that the alleged fraudulent and deceitful practices of the cashier were concealed from the plaintiffs until the trial. The actions were not barred.

We find no error in respect of the evidence; but for error in directing the verdicts the judgments for defendant are reversed, and the causes remanded for further proceedings.

## On Rehearing.

### PER CURIAM.

As the actions below were not founded upon the alleged receipts but upon conversion, fraud, and deceit, there was no error in overruling the motions of appellants for judgment in their favor notwithstanding the verdict. The statute relied on (Shannon's Code Tenn. § 5556) had no application.

■ Appellants suggest that, while the opinion covers the theory of fraud present in the mind of the cashier when he secured the deposits, it fails to state the rule to be applied in case the evidence on a second trial shows good faith then, but a fraudulent purpose

conceived later, and they put such a possible case, where "the notes were actually sold by the bank to appellants and held for safekeeping and collection, but the same or their proceeds were afterwards misappropriated by the cashier." Upon proof of such facts there could be no doubt of the bank's liability. But appellants will no doubt be met with the claim that, if the notes were sold, they were not sold by the bank, and, if they were held for collection, it was not the bank which held them, and the question would be whether Haun was acting for himself or for the bank. None of the other matters suggested in the petition for rehearing seem to require notice.

Our former conclusion is adhered to.